EDWARD L. HENDERSON *v.* STATE OF INDIANA.

[No. 375S64. Filed March 24, 1976. Rehearing denied June 9, 1976.]

*Steven R. Crist, Thomas J. Hall, Singleton, Levy and Crist,* of Highland, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert S. Spear,* Deputy Attorney General, for appellee.

HUNTER, J.—Edward L. Henderson appeals his conviction of first degree murder arising from the fatal shooting of Calvin Jones. His appeal presents two questions: first, whether the verdict is contrary to law; and second, whether the doctrine of transferred intent was applicable in the case at bar.

## I.

In reviewing the sufficiency of the evidence, we are constrained to consider that which is most favorable to the state, together with all reasonable and logical inferences to be drawn from the evidence. When there is substantial evidence of probative value supporting the jury's verdict, the conviction will not be set aside. *Williams* v. *State,* (1969) 252 Ind. 154, 246 N.E.2d 762. A conviction for first degree murder requires proof beyond a reasonable doubt of the purposeful and premeditated killing of another human being.

About 8:30 p.m. on the evening of July 24, 1973, Brady Hutson and the decedent were repairing the tail lights on a vehicle belonging to Sandra Hutson, Brady's sister. Another sister, Gayle Hutson, came storming up, closely followed by the appellant. It seems there had been a lover's spat between appellant and Gayle, and it was not over yet, for appellant grabbed Gayle by the arm. Brady told appellant to let go of

her arm. Appellant did so and left. A few minutes later, Brady went up to his apartment and found the appellant there with Gayle and Artice Hutson, their father. Brady, who was larger than appellant, told him, "If you think you are bad enough to keep pulling on my sister's arm, come downstairs and start pulling on me." Brady went outside. At one of his sisters' request, he and the decedent went for a ride. Appellant left the apartment and Gayle went across the street to her sister's apartment where she called the Gary Police, because she was afraid something might happen. After an hour or so, Brady and Calvin Jones returned to the apartment parking lot, where they remained in the car listening to the radio. In the words of Brady, "Then a big hole came through my windshield . . . on the driver's side." Brady looked out and saw the appellant standing with a rifle in his hand and heard the appellant say, "All right, since you think you are so bad, let's get it on." On cross-examination, Brady was asked whether he saw appellant fire the rifle. Brady replied, "While he was holding the rifle somebody was shooting at my car. I will put it that way." Calvin Jones was taken to the hospital and treated for wounds to the head, neck and chest. He languished and died four days later. Medical cause of death was established as a softening of brain tissue resulting from the head wound.

(A) *Cause of Death*

Appellant alleges that there was "no evidence of any act [by him] which resulted in the death of Calvin Jones." Appellant points to the failure of the state to recover the death weapon or to remove any slugs from the decedent. These items need not be produced to sustain the conviction. *Mandich* v. *State,* (1946) 224 Ind. 209, 66 N.E.2d 69. Appellant also urges Brady's statement on cross-examination as proof that no one saw him fire the weapon. We believe the jury could reasonably infer from the statement "While he was holding the rifle *somebody* was

shooting at my car" that appellant was doing the shooting, particularly in the absence of evidence of others being present at the scene, or evidence of failure by the state to call other eyewitnesses to the crime, as was the case in *Glover* v. *State,* (1970) 253 Ind. 536, 255 N.E.2d 657. Finally, appellant objects that medical testimony was uncertain as to the cause of appellant's injury. The treating physician stated that the presence of small metal like fragments in Calvin's brain might indicate a gun shot wound, and the pathologist testified that he thought the wounds "appeared to be caused by a gunshot." This testimony when considered with that of Brady, and that of Artice Hutson, who testified that he heard several shots and saw the appellant run from the scene with a rifle in his hand, is sufficient to sustain the jury's conclusion that Calvin Jones' wounds resulted from a shooting.

(B) *Intent and Malice*

Appellant acknowledges the familiar principle that malice and intent may be inferred from the use of a deadly weapon. *Aubrey* v. *State,* (1974) 261 Ind. 531, 307 N.E.2d 67. He maintains that no one saw him *use* a gun. Appellant's strong suit is that no one saw him fire the fatal shots, but his weak suit is the circumstantial evidence surrounding the shooting. The hole in the windshield, the wounds to Calvin Jones, Artice Hutson's hearing shots and seeing the appellant fleeing from the scene with a rifle in his hands, and similar testimony by Brady Hutson is sufficient evidence upon which to base a finding that appellant did indeed use the rifle. *McCurdy* v. *State,* (1975) 263 Ind. 66, 324 N.E.2d 489. The jury was properly instructed on the above stated principle over appellant's objection. We find the evidence sufficient to warrant its application.

(C) *Premeditation*

Premeditation requires that the intent to take another's life be mulled over in the mind of the perpetrator prior to

the act. *McCurdy* v. *State, supra.* Here the jury had before it evidence that the relationship between appellant and Brady Hutson was one of mutual dislike and disrespect, that they often argued, that appellant, who was smaller than Brady, was challenged in front of appellant's girl friend (Brady's sister) to assert his manhood by coming outside to pull on Brady, and that after Brady went outside, Gayle told the appellant that they should break up because appellant could not get along with her brother. Artice Hutson stated that appellant complained that Brady was picking on him. Within a few minutes of his return to the parking lot after being gone for about an hour, Brady's vehicle was fired upon. Brady saw appellant standing with a rifle, and recalled appellant saying, "All right, since you think you are so bad, let's get it on." This statement was followed by additional shots. The foregoing evidence would allow reasonable jurors to find that appellant was tired of Brady's interference in his relationship with Gayle Hutson, that he was tired of being picked on, and that he did not like being emasculated by Brady and that he resolved to eliminate the interference and/or get even with Brady by murdering him.

## II.

Appellant contends that the doctrine of transferred intent should be limited to cases where only *intent* is transferred, i.e. offenses no greater than second degree murder. Appellant argues that to apply the doctrine to a first degree murder case requires an extension to allow the transference of premeditation as well as intent. In support of this argument, appellant states that when transferred intent sprang up as a common law doctrine, common law murder was defined as the unlawful killing of another with "malice aforethought" and so did not require proof of premeditation. Appellant has not articulated any meaningful distinction between "malice aforethought" of the common law

and premeditation required under our statute defining first degree murder. The reason is because no logical distinction exists. Regardless of how the mental state of the perpetrator is denominated, defined or broken down, if the evidence shows the requisite mental state to exist in conjunction with the performance of a criminal act, then the law may punish the perpetrator, although the particular person injured was a mere bystander.

We hold that the doctrine of transferred intent is appropriately applied in first degree murder cases where the facts warrant, as they do in this case.

For all the foregoing reasons, the judgment of the trial court is affirmed.

Givan, C.J., Arterburn, DeBruler and Prentice, JJ., concur.

NOTE.—Reported at 343 N.E.2d 776.