**Daniel Joseph SMITH, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 178S2.

Supreme Court of Indiana.

March 21, 1979.

Rehearing Denied May 3, 1979.

Harriette Bailey Conn, Public Defender, Kenneth T. Roberts, Sp. Asst. Public Defender, Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., Jack R. O'Neill, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Daniel Joseph Smith, was convicted by a jury of kidnapping, Ind.Code § 35–1–55–1 (Burns 1975), and exercising unauthorized control over a vehicle, Ind. Code § 35–17–5–9 (Burns 1975). He is currently serving a life sentence on the first count and was assessed a minimum fine on the second count. His direct appeal raises several issues the first of which is the sufficiency of the evidence on all the elements necessary to sustain the conviction of kidnapping. Due to our disposition of the appeal on this issue we do not have to consider the other allegations of error.

An examination of the facts from the record reveals the following. The prosecuting witness, Margo Lynn Werner, was employed by Tidey's Truck Service as a secretary. On the morning of November 1, 1974, she was on an errand for her employer in the employer's truck. As she stopped at a stoplight in the center of downtown South Bend, she observed a pickup truck with two black males in it stopped in another lane. One of the men jumped out of the pickup truck and ran over to her truck. He opened her door and the truck started rolling, so he jumped in. Werner identified the defendant as this man.

As the defendant climbed into the truck he asked Werner why she was so scared and said he wasn't going to hurt her. He also made other comments such as "This is weird" and "I don't know why I'm doing this." Werner did not respond to these comments but moved over to the other side of the truck. She had to climb over several objects that were in the center of the seat. When defendant stopped at another stoplight, Werner jumped out of the truck. There was never any weapon involved. Werner testified that she was afraid, but she also testified that the defendant did not accost her, do anything to her, or make any threats during the time he was in the truck.

The defendant testified that when he first looked over at Werner's truck he thought he recognized the driver as a girl, Sue Pruett, he had known about three years previously. Then when he jumped into the truck he realized he was mistaken in the identity of the driver and tried to reassure Werner that he would not hurt her. Since the stoplight had turned green, he decided to try to catch up to his friend's truck, but his friend had turned a corner. When he stopped at another stoplight, Werner jumped out. The defendant then drove about a half block further but still did not find his friend. He parked Werner's truck, left it undamaged, and walked a few blocks to his house.

Werner immediately reported the incident to the police, and two police officers found the defendant in front of his house talking to a friend about fifteen minutes later. The two officers testified that the defendant did not mention mistaken identity as the reason for the incident. They testified that he told them he had honked at the girl in the truck and she honked back, so he had gone over and gotten in her truck.

Defendant testified at the trial that he did not remember making these statements to the police. He also testified he had been drinking that morning and was "loaded." He was drinking a beer at the time the officers apprehended him.

Rose Marie Pruett testified at the trial that she had known the defendant for a few years but hadn't seen him recently. She also testified that she was called Sue by her friends.

■ The defendant contends that there was insufficient evidence on each element of the kidnapping charge to prove his guilt beyond a reasonable doubt, and that the jury verdict on this count was contrary to law. When the sufficiency of the evidence is challenged on a criminal conviction, we are governed by several precepts which are sometimes difficult to harmonize. *Shutt v. State,* (1977) Ind., 367 N.E.2d 1376. It is well settled that this Court will not weigh the evidence or determine the credibility of witnesses. When there is substantial evidence of probative value supporting the jury's verdict, the conviction will not be set aside. *Poindexter v. State,* (1978) Ind., 374 N.E.2d 509; *Henderson v. State,* (1976) 264 Ind. 334, 343 N.E.2d 776. However, as we have stated before, there is an area within this judicial framework upon which this Court cannot conscientiously close its eyes. Our appellate responsibilities may require a probing and sifting of the evidence to determine whether the residue of facts warrants a conviction; where such residue fails to meet the requirement that each material allegation be supported by substantial evidence of probative value, we must so declare. *Shutt v. State, supra; Gaddis v. State,* (1969) 253 Ind. 73, 251 N.E.2d 658; *Liston v. State,* (1969) 252 Ind. 502, 250 N.E.2d 739.

■ In the instant case, the crime charged was kidnapping. This is a *malum in se* crime and requires that the element of specific intent be proved beyond a reasonable doubt. *Davis v. State,* (1976) 265 Ind. 476, 355 N.E.2d 836; *Snipes v. State,* (1974) 261 Ind. 581, 307 N.E.2d 470. Therefore we must consider what evidence was presented on the element of intent. The act of jumping into the truck, while it might be considered substantial evidence of exerting unauthorized control of a vehicle, is not, by itself, substantial evidence of intent to kidnap. There is no evidence that the defendant used any force or threats to keep the witness in the truck against her will. Werner herself testified that the defendant did not accost her or make any threats to her. The defendant did not tell Werner to stay in the truck nor did he try to prevent her from leaving.

The only evidence which could possibly support the element of intent to kidnap was the testimony of the police officers about defendant's remarks at the time of his apprehension. However, since this indirect evidence was *not* supported by the direct testimony of either the defendant or the prosecuting witness, it cannot be considered substantial evidence to prove the element of intent to kidnap beyond a reasonable doubt. In this case, no weapon was involved. There was no robbery or damage to any of the items in the truck or to the truck itself.

Both the witness and the defendant testified to several remarks defendant made which showed that he was confused about the reason for the incident. These remarks are consistent with defendant's theory of mistaken identity. This theory was also supported by defendant's witness, Rose Marie Pruett. Most significant is the fact that the victim herself testified that no threats were made to her and she was not accosted or harmed in any way.

■ The existence of intent to kidnap must be found objectively in the light of the surrounding circumstances, and the standard is the reasonableness of such a determination under the circumstances. While an inference of an intent to kidnap might arise from defendant's act of jumping into the truck, coupled with the police officers' testimony, this inference is counterbalanced by unrefuted evidence that the defendant made no effort to keep the victim confined in the truck or to harm her. It is not necessary for us to invade the

exclusive province of the jury to determine the weight of the evidence and the credibility of the witnesses, since any possible inference of intent has been counterbalanced by much unrefuted evidence and therefore does not have sufficient force to be the substantial evidence of probative value necessary to prove the element of intent beyond a reasonable doubt.

"Thus, if as a result of our probing and sifting the evidence most favorable to the state, we determine that the residue of facts is so devoid of evidence of probative value and reasonable inferences adduceable therefrom, as to preclude guilt beyond a reasonable doubt, we should so declare. A failure to do so is a rejection of our duty as an appellate tribunal and tantamount to the enunciation of a rule that any evidence no matter how infinitesimal or inferences drawn therefrom, whether based on speculation or conjecture, would be sufficient to establish guilt beyond a reasonable doubt. This we are not inclined to do for to assume such a judicial posture, neglecting our appellate responsibility, would reduce the appellate process to an exercise in impotent and meaningless futility. See *Manlove v. State* (1968), 250 Ind. 70, 232 N.E.2d 874; *Baker v. State* (1956), 236 Ind. 55, 138 N.E.2d 641." *Liston v. State, supra,* 252 Ind. at 511–512, 250 N.E.2d at 743–744.

■ The charge of kidnapping is not made out unless it is shown beyond a reasonable doubt that the accused intended to do the prohibited thing, to forcibly or fraudulently carry off a person from any place within the state. *Davis v. State, supra; White v. State,* (1963) 244 Ind. 199, 191 N.E.2d 486; *Boatman v. State,* (1956) 235 Ind. 623, 137 N.E.2d 28. We would therefore conclude that defendant's conviction of kidnapping is not sustained by sufficient evidence and should be reversed.

While the defendant has raised several other assignments of error in this appeal, most of them are directed to the verdict on the kidnapping charge and therefore do not have to be considered. The errors relating to alleged general procedural defects of the trial as a whole were not properly objected to at the trial and are therefore waived.

■ The United States Supreme Court has recently held that the Double Jeopardy Clause precludes a second trial when the reviewing court has found the evidence insufficient to sustain the jury's verdict of guilty, and the only just remedy available is the entry of a judgment of acquittal. *Burks v. United States,* (1978) 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1; *Greene v. Massey,* (1978) 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15.

Therefore, the judgment on the charge of kidnapping must be vacated with instructions to the trial court to enter a judgment of acquittal (a finding of not guilty notwithstanding the verdict) on Count I, kidnapping. The judgment on Count II is affirmed.

Judgment reversed in part, affirmed in part.

DeBRULER and PRENTICE, JJ., concur.

PIVARNIK, J., dissents with opinion in which GIVAN, C. J., concurs.

PIVARNIK, Justice, dissenting.

I must dissent from the majority opinion in its conclusion that appellant's conviction of kidnapping is not sustained by sufficient evidence. A mere conflict in the evidence does not give rise to our appellate responsibilities requiring a probing and sifting of the evidence to determine whether the residue of facts warrants a conviction. Our responsibility is to determine if there is substantial evidence of probative value, even though conflicting with other evidence, supporting the jury's verdict. If there is such evidence before the jury, there is a sufficiency of the evidence. *Poindexter v. State,* (1978) Ind., 374 N.E.2d 509; *Ruetz v. State,* (1978) Ind., 373 N.E.2d 152.

The testimony of the prosecuting witness Margo Werner, was sufficient evidence for the jury to find as it did. She testified that she had stopped at an intersection and then noticed the appellant. He left the truck he was riding in, came over to her truck,

pulled open the door, pushed her over, and took over its operation. He then drove around, making several turns, *for about fifteen minutes.* The very first time he stopped the truck due to traffic, she exited and ran to the car stopped immediately behind her truck and asked to be taken to the police station.

Witness Zimmer, the driver of the car immediately behind the truck to which Werner ran for help, testified that he stopped behind the truck when they both were stopped for a traffic light, that after a short time, Margo Werner quickly exited the right door of the truck and ran back to his car, asking him to take her to the police station.

The majority is giving much more weight and credibility to the appellant than the jury gave him. The trial testimony of the appellant involving one Sue Pruett is a very different story than the one he told the police when they apprehended him shortly after the incident. On the day of the incident when he was apprehended by the police and on the day after when he gave his written statement, he told the police that when he noticed this young girl driving the truck he told the driver of his truck, Lee Hall, to honk the horn and manoeuvre the truck so as to attract her attention. He stated that when they did this, she honked her horn in response and when he waved to her she waved back. As he put it, he made a pass at her and she accepted the pass. He then stated that when they arrived at the intersection in question Werner pulled her truck over to the right, close to the curb, and stopped. He then went over to her truck and opened the door and she moved over to allow him to get in. When the police asked him why he did this he responded with the statement, "You know me—,I would fuck a snake." He then stated that he was very surprised when she left the truck at the first stop.

There was no corroboration of Defendant's self-serving testimony of mistaken identity. Sue Pruett did not bolster his claim. She had not seen him in 3 years. The victim testified there was no conversa-

tion at all about mistaken identity involving Sue Pruett or anyone else. She said she feared for her safety and escaped at the earliest opportunity when the vehicle stopped.

Witness Lee Hall testified that the defendant was in his truck on that morning but testified further that there was no discussion whatever about the truck driven by witness Werner. He did not drive the truck erratically to attract her attention, nor did he honk the horn, nor was there any discussion about any of these things between himself and appellant Smith. He said he was generally aware of a pick-up truck being over in the other lane waiting for a light, but paid no particular attention to it. He said that he needed some oil for his truck and usually carried some under the front seat so, while waiting for the light to change, he leaned down and checked under the seat to see if there was a quart of oil there. While he was bent over in that fashion, he heard the truck door open and he looked up and saw Smith leave his truck, run to the other, open the door and get in and drive off. He said he assumed that Smith must know the person in that truck and so Hall went on his way.

Credibility is again given appellant by the majority in his statement before the jury that the fact that he was "loaded" may explain his behavior on the day in question and further account for his failure to remember statements made to the victim and to the police in direct conflict with his statements on the stand.

The evidence was that on that morning, appellant had only 2 or 3 beers and was not intoxicated. He told the police he was not, and they said from their observations and discussions with him, he was not.

I therefore fail to see the accuracy of the statement in the majority opinion that states "Any possible inference of intent has been *counterbalanced by much unrefuted evidence* and therefore does not have sufficient force to be the substantial evidence of probative value necessary to prove the element of intent beyond a reasonable doubt." The two versions of appellant's story were

in direct conflict with each other and thus could hardly be termed unrefuted evidence that counterbalanced the inference of intent. The taking over of the vehicle in the fashion that he did, together with all inferences which the jury might attach to that act, were sufficient evidence to show the appellant's intent to kidnap Werner. It is not necessary that there be further evidence of threats, grabbing or attacking or a verbal expression of intent to the prosecuting witness. The jury could rightly assume that he had her confined in the vehicle where she could not escape inasmuch as it was moving down the street and would require her to leap from it while it was so moving in order to extricate herself from her situation. It is noteworthy that she did, in fact, escape at the very first opportunity.

Although it is not necessary for us to so find, a reading of the transcript will reveal that the testimony of the appellant was so fraught with conflict and incredibility plus a lack of corroboration by any other witness, that the jury was justified in attaching no credibility whatever to his self-serving statements. The significant thing to me is that the jury heard all of the witnesses and chose not to believe appellant but did believe the prosecuting witness together with all of the other evidence they heard. We have no reason to "second guess" them and, as a matter of law, have a responsibility not to do so. I would vote to affirm the conviction.

GIVAN, C. J., concurs in dissent.