Samuel **WOFFORD**, Appellant (Defendant below),

v.

**STATE of Indiana, Appellee** (Plaintiff below).

No. 279S49.

Supreme Court of Indiana.

Sept. 11, 1979.

102

Harlan M. Noel, Hammond, for appellant.

Theodore L. Sendak, Atty. Gen., Rollin E. Thompson, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Samuel D. Wofford, was convicted by a jury of murder, Ind.Code § 35–42–1–1 (Burns 1979), and was sentenced to forty years' imprisonment. His direct appeal raises the following issues:

1. Whether the defendant was denied a fair trial due to improper remarks of the deputy prosecutor;

2. Whether the admission of certain photographs and certain testimony was reversible error;

3. Whether the evidence was sufficient to support the jury's verdict; and

4. Whether it was error to allow the alternate juror and the instructions to be sent to the jury room.

A summary of the facts from the record most favorable to the state indicates that late one night the defendant had invited James R. Medley into the living room of the apartment he shared with Sharon Brown. The two men had something to eat and then defendant told Brown to go into the bedroom. Brown testified that while she was in the bedroom, she heard shots from the living room. Defendant called her and when she came into the living room he said, "I just killed this man."

Brown also testified that the defendant told her to tell the police she had shot Medley because he wouldn't leave. On further direct examination, it was established that Brown's testimony about seeing defendant with a gun and his instructions to her about what to tell the police had not been included in her original deposition statement to the defense because she was afraid of reprisal from the defendant. The defendant's counsel was told before the trial that Brown's testimony had changed but he did not take a second deposition.

## I.

The defendant first contends that the prosecutor made an improper comment on the defendant's failure to testify. Although the defendant had not testified, he had put a witness on the stand in an attempt to impeach the state's witness, Shar-

on Brown, and show that Brown might have been the one who shot Medley. During the final argument to the jury, the prosecutor commented on the fact that the defendant's evidence did not contradict the state's case in the following remarks:

"What I have to say now, is Mr. Jablonski has not touched the State's case. Mr. Jablonski has spent his entire time talking about prostitution. Mr. Jablonski spent a lot of time talking about who was actually holding the gun at one particular moment. Okay, does that action in any way rebut what the State's evidence shows?"

■ The defendant cites *Rowley v. State*, (1972) 259 Ind. 209, 285 N.E.2d 646, in support of his argument that the above remarks were an improper comment on the defendant's failure to testify. It is true that any direct or indirect reference to the defendant's failure to testify is an impingement of his constitutional and statutory rights not to testify. *Griffin v. California*, (1965) 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106; Ind.Code § 35–1–31–3 (Burns 1975). However, this Court has held that where the defendant puts on evidence in his defense, it is proper for the prosecutor to comment on the fact that the defendant's evidence does not contradict the state's case. *Fortson v. State*, (1978) Ind. 379 N.E.2d 147; *Ross v. State*, (1978) Ind. 376 N.E.2d 1117.

■ In the instant case, counsel for defense had spent considerable time trying to establish from his witness that Sharon Brown had given perjured testimony, that she was a prostitute, that she had bought the gun for her own protection, and that therefore the jury could infer that she, not the defendant, had killed Medley. Under these circumstances the prosecutor's comment was not a direct or indirect reference to defendant's failure to testify and did not jeopardize defendant's rights.

## II.

The defendant next alleges that the admission of certain photographs and certain

testimony was erroneous and that taken either individually or collectively these admissions constitute reversible error.

The first exhibit objected to was state's exhibit Number One which was a close-up picture of Medley's head and chest after he had been shot and was lying slumped on a couch. At the time the photograph was offered by the prosecution for introduction, there had been no testimony presented describing the death or shooting of the victim. The state offered the photograph for the purpose of identifying the victim via the testimony of the victim's brother-in-law who identified the man as James Medley. The defendant objected that a sufficient foundation had not been established since the brother-in-law could not testify to the accuracy of the scene. He further argues that the picture was highly prejudicial since it showed the victim with a head wound which was not established as the cause of death. However, we have often held that the trial court has considerable latitude in determining the admissibility of photographs when a conflict appears between the state's right to present relevant evidence and the defendant's right to be protected from prejudicial imbalance. *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482.

The photograph in the instant case was relevant as to the identity of the victim. There was no need for the brother-in-law to testify to the accuracy of the scene, since the picture was only admitted for the purpose of showing the identity of the victim. The picture was prejudicial to the extent that it showed Medley dead before any testimony about his death had been introduced. But the next witness did testify that Medley was shot both in the head and in the chest, although it was the shot to the chest which was determined to be the cause of death. Photographs of decedent's "non-fatal" wounds have been held properly admissible where relevant to other testimony concerning such questions as purpose and malice. *Smith v. State*, (1968) 250 Ind. 125, 235 N.E.2d 177. In light of the subsequent testimony, we cannot say that the photograph in the instant case was so prejudicial as to require reversal.

The defendant next alleges that state's exhibit Number Seven, another picture of the victim lying on Brown's couch, was inadmissible due to its "cumulative" nature. However, there is no merit to this contention, since the photograph shows more of Brown's living room than did exhibit Number One. We have held that photographs of the scene, even if repetitive or cumulative to some extent, are properly admissible so long as they are competent and relevant aids to the jury in orienting themselves and in understanding the evidence. *Inman v. State*, (1978) Ind. 383 N.E.2d 820; *Patterson v. State, supra.*

The defendant next alleges that it was improper to admit state's exhibits Numbers Eight and Nine, which showed the backstairs of Sharon Brown's apartment, during the presentation of defendant's case-in-chief. We find no error here since it was the defense witness's testimony as to having seen the defendant running down the backstairs that prompted the state's introduction of these photographs. The order of proof lies largely within the trial court's discretion, and there was no abuse of discretion here since the photographs were clearly relevant. *Rogers v. State*, (1979) Ind. 383 N.E.2d 1035. We find no reversible error in the admission of any of the photographic exhibits.

The defendant also alleges that in three instances testimony was erroneously admitted. He first alleges that it was improper to admit Sharon Brown's testimony about his appearance on the night of the crime. She testified that he "appeared like, you know, strange as he acts sometimes when he is high." There was no error here since it has long been the rule that a nonexpert may voice an opinion as to whether the accused was intoxicated. *New v. State*, (1970) 254 Ind. 307, 259 N.E.2d 696. Furthermore, the old rule that a witness may not give an opinion of an ultimate fact question has been abrogated in this state. *Coonan v. State*, (1978) Ind. 382 N.E.2d 157; *Woods v. State*, (1978) Ind. 372 N.E.2d 178.

The defendant next alleges that part of the defense witness's testimony on cross-examination was erroneously admitted because it was outside the scope of the direct examination. However, the objected to testimony concerned whether the police had asked the witness about a gun and was clearly part of the subject matter covered by direct examination when the following question was asked by defense counsel:

Q. "What did you see after you heard the shots?"

A. "I seen this man going down the back stairs, then I seen Sharon running in the front door with the gun in her hand."

There was no error in referring back to this gun on cross-examination since it is clear that the scope of permissible cross-examination extends to all phases of the subject matter covered in direct examination and is not limited to those parts specifically included in the direct examiner's questions. *Howard v. State*, (1976) 265 Ind. 503, 355 N.E.2d 833.

The defendant also alleges that part of Sharon Brown's testimony was inadmissible since it was "surprise and perjured" testimony. This testimony established that Brown had seen defendant with a gun in his hand and that he had told her to tell the police she was the one who fired the shots. Although this testimony was different from the story given to the defense on deposition, we find no error here since defendant had been told that Brown had changed her testimony and had declined to take a second deposition.

### III.

The defendant next contends that there was insufficient evidence to uphold his conviction since the only evidence connecting him to the victim was the testimony of a "self-confessed perjurer." However, Brown had given an explanation as to why she had changed her testimony after giving her deposition to defendant. It was the jury's duty to judge her credibility. The defense witness who lived below Brown's apartment corroborated parts of Brown's story and also testified that she had seen defendant running down Brown's back steps after she heard shots. A police officer testified that the defendant turned around to walk in the opposite direction when he first saw the police car after the crime.

On review this Court does not judge the credibility of witnesses nor weigh evidence but rather looks at the evidence most favorable to the state and the reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *Washington v. State*, (1979) Ind. 390 N.E.2d 983; *Poindexter v. State*, (1978) Ind. 374 N.E.2d 509; *Henderson v. State*, (1976) 264 Ind. 334, 343 N.E.2d 776. The testimony of the eyewitness, the police officer, and the downstairs neighbor was sufficient to support the verdict in this case.

At one point during Brown's testimony, the prosecutor moved for the admission of state's exhibit Number Three which was alleged to be the gun Brown saw in defendant's hand after the shooting. The defense objected on the basis that a proper chain of custody had not been established and the court deferred ruling on the question of admissibility. The defendant now claims that this was prejudicial use of non-evidence which should have caused a mistrial.

It is a basic tenet that it is within the sound discretion of the trial court to declare a mistrial and the trial court's determination will not be disturbed absent an abuse of discretion. *Love v. State*, (1977) Ind. 369 N.E.2d 1073. In this instance, the opportunity for prejudice to the jury was slight, since there had been specific testimony about a gun being fired and the witness had identified the proposed exhibit as being the gun she saw defendant holding at the time of the crime. There was no cause for declaring a mistrial here.

### IV.

The defendant further contends the trial court erred in permitting the in-

structions to be sent to the jury room. Although jury instructions are generally not to be sent to the jury room during deliberations, this Court has held that it is harmless error to do so if the crucial requirement of first reading the instructions in open court in the presence of the parties and their attorneys was met. *Morris v. State*, (1979) Ind. 384 N.E.2d 1022; *Jameison v. State*, (1978) Ind. 377 N.E.2d 404. In the instant case, the trial court orally instructed the jury in open court in the presence of defendant, his attorney, and the prosecutor. Therefore, the error in sending the instructions to the jury room was harmless.

Defendant's final allegation of error is that it was reversible error to allow the alternate juror to be sent to the jury room during the final deliberations. However, this issue was fully discussed by this Court in *Johnson v. State*, (1977) Ind. 369 N.E.2d 623, where we held that an alternate juror can retire with the jury if instructed not to participate in the deliberations unless called upon to replace a regular juror. In the instant case, the trial court gave the proper instruction, therefore there was no error committed in allowing the alternate juror to retire with the rest of the jury. *Minton v. State*, (1978) Ind. 378 N.E.2d 639; *Poindexter v. State, supra.*

For all the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.