Phillip A. PAVEY, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 2–584A129.

Court of Appeals of Indiana,
Second District.

May 23, 1985.

William D. Bright, Portland, for appellant (defendant below).

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee (plaintiff below).

SHIELDS, Judge.

Phillip Pavey appeals his conviction in a jury trial of Child Molesting, a class C felony. Pavey raises seven issues for our review:

1) whether Pavey's statement was erroneously admitted into evidence because it was the fruit of an illegal search, or an illegal arrest, or because it was involuntarily given,

2) whether the 10-year-old victim was competent to testify,

3) whether the evidence was sufficient to support his conviction,

4) whether the court erred in overruling Pavey's objection to a portion of the pre-sentence investigation report, and

5) whether the court erred in imposing the maximum sentence of eight years?

*Facts*

On October 28, 1982, L.M., nine years old at the time, was being cared for by a babysitter at her home in Portland, Indiana. While Phillip Pavey, a friend of the babysitter, was at the babysitter's house L.M. agreed to go with him in his car to the Goodyear store in Portland. Instead, Pavey drove to the house in which he had been living with Shirley Roser. Roser was in the hospital at the time.

L.M. accompanied Pavey into the residence. They entered the downstairs bedroom Pavey had been sharing with Roser, and Pavey locked the door. Pavey took off L.M.'s shirt and jeans, unzipped his pants, and had her perform fellatio. Pavey kissed her, touched her breast, and reached inside her panties to touch what the victim described as, "what I go to the restroom with." Record at 298–99.

Roser's two daughters, Teresa and Pam Franks, were in the living room when Pavey and L.M. entered the house. From her position on the couch Teresa could see through a one to two inch gap in the door frame into the downstairs bedroom. Teresa saw Pavey and the girl in various stages of undress and at one point saw Pavey nude. She also observed Pavey with his hands around the girl's waist before Pavey noticed he was being watched and moved out of the line of sight.

When her boyfriend, Fred Shultz, arrived at the house, Teresa told him what she had seen in the bedroom and had him look through the gap in the door frame. He observed the bare feet and ankles of a

person lying on a bed. He then left the house and rode his bicycle to the police station. When two county police officers arrived at the house in response to Fred's contact, Teresa told them, "[t]hat Phil had a little girl in there and that I saw him undress with the little girl," record at 327, invited them in, and showed them the gap in the door frame. One officer observed the bedroom through the gap for a minute or two. He saw Pavey lying on the bed and the girl sitting on the edge of the bed pulling on her jeans. Pavey had his hand on her stomach. The officer then lifted the hook lock with a kitchen knife and entered the bedroom.

Approximately one hour after the arrest, Officer Grider read Pavey the *Miranda* warnings and asked him if he would like to make a statement. Pavey signed the *Miranda* waiver and agreed to answer the questions about the case. Pavey said that because he was so upset he wanted Officer Grider to write out the statement. Grider wrote Pavey's statement and read it to Pavey who then signed it before a witness.

On Septmeber 14, 1983, a jury found Pavey guilty of child molesting. He was sentenced to eight years in prison.

## I.

### A.

Pavey asserts the trial court erred in admitting his statement into evidence over his objection. Pavey first argues the statement was inadmissible as the product of the illegal search conducted by the police officers when they looked through the gap in the door frame into the bedroom. Accordingly, Pavey claims their testimony should have been suppressed.

■ The fourth amendment and Article 1 § 11 of the Indiana Constitution protect individuals from unreasonable searches and seizures. However, simple observations by officers standing in a place where they

have a right to be[1] are not searches in the constitutional sense. *Bruce v. State*, 268 Ind. 180, 375 N.E.2d 1042 (1978); *Montague v. State*, 266 Ind. 51, 360 N.E.2d 181 (1977). The scope of the protection against unreasonable searches is delineated in the opinion in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967):

> "[T]he Fourth Amendment protects people not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.... But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."

389 U.S. at 351–52, 88 S.Ct. at 511 (citations omitted). *See United States v. Jackson*, 588 F.2d 1046 (5th Cir.1979) (reviewing several cases of observations and listenings that were not considered searches).

■ In similar cases, courts have held that using a flashlight to look through the window of a parked airplane was not a search, *United States v. Coplen*, 541 F.2d 211 (9th Cir.1976), that looking through a garage door that was ajar was not a search, *James v. United States*, 418 F.2d 1150 (D.C.Cir.1969), and that unenhanced or "naked eye" viewing of activities (taking place in an apartment across the street) by persons located where they may properly be transgressed no fourth amendment protection. *United States v. Taborda*, 635 F.2d 131 (2nd Cir.1980). *See also Morgan v. State*, 427 N.E.2d 14 (Ind.App.1981) (not a search when officers looked into car from lawful position); *State v. Day*, 50 Ohio App.2d 315, 362 N.E.2d 1253 (1976) (placing ear near door of hotel room not a search). Similarly, the officers did not "search" the bedroom Pavey was in when they looked through the gap in the door frame from a position they were legally invited to take. The trial court properly admitted the observation testimony.

---

1. Pavey does not dispute that the officers had the right to enter the Roser living room, from where they made their observations, at the express invitation of Roser's daughter. Therefore, this court assumes that the officers were in a place where they had a right to be at the time they made their pertinent observations.

## B.

Secondly, Pavey argues his incriminating oral and written statements made to police after his arrest should have been suppressed as the products of an illegal arrest.[2]

■ In the instant case, the officers had probable cause to make the warrantless arrest. They had credible evidence that a felony had just been committed.[3] The very real possibility of further molestation or abuse of the victim during the delay necessary to obtain a warrant created the exigent circumstances that forced the officers to make a warrantless arrest. *See Harrison v. State,* 424 N.E.2d 1065 (Ind.App. 1981). Pavey's reliance on the opinion in *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) is misplaced. In *Payton,* the Court carefully described the narrow issue as involving arrests in which there was ample time to obtain a warrant. The Court expressly distinguished the facts of *Payton* from those cases in which the entry to effect an arrest was justified by exigent circumstances. 445 U.S. at 583, 100 S.Ct. at 1378.

In the instant case, the officers did not have time to obtain a warrant and their entry into the bedroom was completely justified by the exigent circumstances.[4] While in most cases the facts that support a warrantless arrest on the grounds of exigent circumstances involve the potential for the destruction of evidence (particularly drugs), *see e.g. United States v. Knobeloch,* 746 F.2d 1366 (8th Cir.1984), the instant facts involved the much more serious potential for further physical or psychological harm to the victim of a child molestation. We would not expect police officers to be required to leave the scene, prepare an affidavit, and search for a magistrate after observing a kidnapping in progress or the final stages of a robbery, and we will not hold the officers to that requirement in the instant similar circumstances.

## C.

Pavey also argues that the oral and written statements he made while in custody "were not the product of a rational intellect but were the product of an extremely upset and irrational individual." Appellant's Brief at 25. He argues that the court erred in not suppressing the admissions he made while in custody because they were not voluntarily made.

■ The Indiana Supreme Court has described our standard of review:

"The question of voluntariness is one for the trial court. We review the question on appeal as we do other sufficiency matters. We do not weigh the evidence but rather determine whether there was substantial evidence of probative value to support the trial court's finding. *Schutz v. State,* (1981) [275 Ind. 9], 413 N.E.2d 913."

*Smith v. State,* 432 N.E.2d 1363, 1369 (Ind. 1982). The record in the instant case reveals substantial evidence of probative value supporting the trial court's finding of voluntariness. Although Pavey was crying and too upset to write, the officers made no threats or promises contingent upon Pavey making a statement. Pavey admitted that the officer's promise to get a doctor did not

---

2. The method and manner of the officers' entry into the bedroom is not an issue on appeal. It was not briefed, included with any specificity in the motion to correct error, or argued at the suppression hearing.

3. Although not presented, the evidence supports the argument that the officers were observing a felony committed in their presence. *See People v. Eichelberger,* 91 Ill.2d 359, 63 Ill.Dec. 402, 438 N.E.2d 140 (1982).

4. We note, without discussing the issue, that when the tenant, Mrs. Roser, entered the hospital, her daughter Teresa, 19, who also lived in the house, was left in charge of her sixteen year old sister and instructed to keep the house clean. This evidence may reasonably support the inference Teresa had the authority to consent to the officers' entry into the bedroom. *See State v. Folkens,* 281 N.W.2d 1 (Iowa 1979); *Harmon v. State,* 277 Ark. 265, 641 S.W.2d 21 (1982). *But see Tompkins v. Superior Court of San Francisco,* 59 Cal.2d 65, 27 Cal.Rptr. 889, 378 P.2d 113 (1963) (presence of objecting joint occupant may make search nonconsensual).

induce him to give them a statement. He was sufficiently rational to request to see a doctor, to respond to questions, and to initial and sign papers. Pavey had listened to, had stated he understood, and had signed his rights and waiver of rights statements before making the statements in question.

## II.

Pavey argues that the trial court erred in finding the victim competent to testify. His argument is that, based on the following colloquy, the victim could not be found to have understood the consequences of not telling the truth:

> "Q. You say you understand that you could be punished if you don't tell the truth?
>
> A. Um hum. (indicating yes)
>
> Q. Ok. Do you have any idea what that, being punished would mean, do you have [any] idea at all?
>
> A. I wouldn't know what the punishment would be."

Record at 288–89.

■ However, Pavey's argument is irrelevant because the victim was ten years old when she testified. Indiana law presumes the competency of a ten-year old and the unnecessary *voir dire* did not rebut that presumption that the victim understood the obligation of an oath. *See* Ind.Code Ann. §§ 34–1–14–4 and 5 (West 1983). *See generally Carter v. State*, 408 N.E.2d 790 (Ind.App.1980); *Newton v. State*, 456 N.E.2d 736 (Ind.App.1983). There is no error in the trial court's decision that the victim was a competent witness.

## III.

Pavey argues the evidence was insufficient to support a jury's finding that he had the requisite intent to arouse or satisfy his sexual desires when he touched and fondled the victim.[5]

The court described the relevant law in *Best v. State*, 418 N.E.2d 316 (Ind.App. 1981):

> "Best claims there is insufficient evidence of specific intent 'to arouse or to satisfy the sexual desires of either the child or the older person ... under Ind. Code 35–42–4–3(b)' to support the finding and judgment of the court. In *Tapp v. State*, (1971) 256 Ind. 422, 269 N.E.2d 367, the court held that evidence of defendant having a child feel his 'privates,' and defendant feeling her 'privates,' was sufficient to support a conviction of touching with intent to satisfy sexual desires. The court may infer from the State's presentation of evidence that the touching did occur, and the intent did exist without a direct showing of both elements. *McDonald v. State*, (1970) 254 Ind. 645, 261 N.E.2d 852. Where specific intent is required, it may be inferred from all of the circumstances. *Smith v. State*, (1979) [270 Ind. 479], 386 N.E.2d 1193."

418 N.E.2d at 320.

■ In the instant case the testimony as to the touching and fondling of the victim was alone sufficient to support the conviction. *See Dougherty v. State*, 451 N.E.2d 382 (Ind.App.1983) (the testimony of the victim alone is generally sufficient to sustain a conviction for child molesting). Pavey's direction to the victim to perform fellatio on him allows no other reasonable inference than that he was attempting to arouse or satisfy his own sexual desires.

## IV.

The last eight pages of the presentence report prepared for the court in Pavey's case include 1) a two-page sworn statement by Pam Franks detailing her claim that Pavey had raped her several times and 2) a six-page transcript of a 1982 taped inter-

---

5. Ind.Code Ann. § 35–42–4–3(b) (West Supp. 1984–85) provides in pertinent part as follows: "A person who, with a child under twelve (12) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony."

view of Donna and Carol Elliott by the Portland, Indiana police. The transcript included descriptions by Donna and Carol, ages 26 and 23 respectively, of incidents of physical abuse and forced sexual acts by Pavey.

Pavey objected to those pages being included with the presentence report arguing that the information was of unrelated, non-charged incidents, hearsay, and highly prejudicial to his sentencing and progress through Department of Corrections processing.

■ We find two compelling reasons to affirm the trial court's overruling of Pavey's objection. Initially, the record shows that the trial court did not consider the disputed pages in determining Pavey's sentence: "As the transcript of the sentencing hearing, and this Court's memory of the sentencing all reveal, the objected to pages were read by the court and were not used as a factor in Defendant's sentencing...." Record at 181. Secondly, if a trial court considers an improper aggravating circumstance in enhancing a sentence, there is no error if the other aggravating circumstances are adequate to support the sentence imposed. *Forrester v. State*, 440 N.E.2d 475 (Ind.1982). As described in section VI of this opinion, other aggravating circumstances cited by the court adequately support Pavey's enhanced sentence.

### V.

Pavey argues the trial court erred in enhancing the presumptive five-year sentence by considering circumstances that the legislature used to prohibit suspension of his sentence (a prior felony conviction) and used to increase the potential penalty for the offense (the victim's age). He claims further error in the trial court's consideration of the circumstance that the offense was a crime against the person because there is no evidence of any injury being inflicted on the victim.

We disagree.

■ The nonsuspendibility of Pavey's sentence is a legislative restriction upon the trial court's discretion as to the *manner* in which the imposed sentence will be served. That interest is entirely distinct from the question of the *length* of the sentence and it is entirely appropriate that the legislature should require that the same circumstances influence each of the two separate interests. *See Inman v. State*, 271 Ind. 491, 393 N.E.2d 767 (1979).

We also find no impediment to the trial court's consideration of the victim's age as an aggravating circumstance.

■ This court assumes the legislature took into consideration the serious nature of every act it defines as criminal, and that in all cases it assigned an appropriate level of punishment. The legislature, however, allowed as an aggravating circumstance the seriousness of any *individual* offense within the generally serious nature of the offense in the abstract. Thus, within the broad area of conduct defined as molesting a child of fewer than twelve years, individual circumstances may show that a particularly disturbing case warrants an enhanced sentence. *See Washington v. State*, 422 N.E.2d 1218 (Ind. 1981). The specific age of the victim within the range of fewer than twelve years is just such an individual circumstance.

■ Finally, we reject Pavey's construction of the circumstance of the offense being a crime against the person as requiring evidence of particular physical or emotional injury to the victim. Rather we construe the circumstance as allowing the trial court to consider the nature of the conduct to which the victim was subject. Thus, while the prohibited conduct is fondling or touching with the requisite intent, the specifics that fall within that conduct are varied and may range from a caress to, as here, fellatio. The specific conduct and its relative heinousness is an appropriate matter for the trial court to consider in assessing the particular punishment for the particular offense.

We find no error in the trial court's consideration of prior criminal convictions, the age of the victim, and the nature of the

offense to enhance the sentence imposed on Pavey.

 In addition, we note that the trial court enumerated other bases for the aggravated sentence. These other circumstances, not attacked by Pavey, are sufficient to support the enhanced sentence.[6] *See Anderson v. State,* 448 N.E.2d 1180 (Ind.1983). This court will not revise a sentence authorized by statute except where the sentence is manifestly unreasonable. In the instant case, a reasonable person would conclude Pavey's sentence was appropriate. *See* Ind.Rules of Procedure, Rules for the App.Rev. of Sentences, Rule 2.

Judgment affirmed.

BUCHANAN, C.J., and SULLIVAN, J., concur.

---

**6.** Other enumerated considerations included:

"The psychological examination reports filed in March and April, 1983 show that Defendant has what could be described as a hardened offender profile and that he is not mentally ill and is not likely to respond well to or be helped by counselling or therapy. Giving a reduced sentence in this case would take away from the seriousness of the crime as committed herein and the facts and circumstances of this case call for and strongly suggest the propriety of giving the maximum sentence in this case."

Record at 170.