## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 31 2015, 9:12 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Frederick Vaiana | Gregory F. Zoeller |
| Voyles Zahn & Paul | Attorney General of Indiana |
| Indianapolis, Indiana | |
| | Tyler G. Banks |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kenyon Sanders, | July 31, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 49A05-1412-CR-576 |
| v. | Appeal from the Marion Superior Court. |
| State of Indiana, | The Honorable Grant W. Hawkins, Judge. |
| *Appellee-Plaintiff.* | Cause No. 49G05-1311-FB-72264 |

**Shepard, Senior Judge**

[1]     The State charged that appellant Kenyon Sanders tried to murder Devin Staten by shooting him three times outside of a strip club in Indianapolis.

[2]     At trial, the prosecution presented GPS evidence that Sanders was present at the club, an electronic scan of Sanders's personal identification card taken at the

club, and video of the shooting taken from various of the club's forty security cameras.

[3] The claim on appeal is insufficient evidence. We affirm.

## Issue

[4] Sanders raises one issue: whether there is sufficient evidence to prove beyond a reasonable doubt that he was the person who shot the victim.

## Facts and Procedural History

[5] The evidence favorable to the jury's verdict revealed that Devin Staten entered a strip club in Indianapolis on December 14, 2013, at 12:05 a.m. The club's owner had installed over forty cameras, including nine cameras that were mounted on the outside of the building to cover the parking lot. Another camera was placed inside the club's entrance to record customers as they arrived. All of the cameras transmitted and saved footage to a hard drive. The footage was time-stamped, enabling us to provide precise times in this memorandum decision. Customers entering the club were searched for weapons and required to produce photo identification, which was also recorded with a scanner.

[6] Kenyon Sanders and Keith Nelson arrived at the club at 12:29 a.m. Sanders wore camouflage pants and a dark jacket. He was the only person at the club at that time wearing camouflage pants. Sanders and Nelson showed their picture IDs to the club's security staff, who scanned them. Sanders and Nelson left the

club at 1:10 a.m. They got into a car and drove away, returning to the club's parking lot at 1:23 a.m. Next, they were involved in an auto accident with another vehicle in the lot. Nelson exited the car and spoke with the occupants of the other vehicle for several minutes while Sanders drove the car to another part of the lot. Sanders walked up to Nelson as the other vehicle left.

[7]    Meanwhile, Staten left the club at 1:28 a.m. He passed two men as he walked to his car. The surveillance system shows him approaching and walking by Sanders and Nelson. Staten heard one of them say, "Is that him?" Tr. p. 78. Staten did not think they were referring to him, and he did not look closely at them. The surveillance system shows that after Staten walked past the men, Sanders pulled out a handgun and shot at Staten's back three times. Staten ducked and ran around a corner of the club, and Sanders and Nelson ran the other way.

[8]    Sanders was wearing a GPS tracking monitor that was monitored by Marion County Community Corrections. The monitor, affixed to Sanders' ankle, indicated that he was at the club when the shooting occurred.

[9]    Staten had been shot in his left forearm. He ran to his car and retrieved a handgun. He walked out of the parking lot but returned at 1:35 a.m. He tried to reenter the club but was denied entry because he had blood on him. When the police arrived, Staten stashed his gun under a car before talking with the officer. An ambulance arrived, and Staten was taken to a hospital. An evidence technician searched the lot and found three shell casings at the site of

the shooting, as well as Staten's gun. Subsequent testing revealed that Staten's gun could not have fired the rounds that produced the three shell casings.

[10] After reviewing the club's surveillance recordings, Detective Bradley Millikan of the Indianapolis Metropolitan Police Department located and arrested Sanders. Sanders was wearing the same camouflage pants that he wore on the night of the shooting. Detective Millikan subsequently executed a search warrant at Sanders' home and found the jacket Sanders wore on the night of the shooting, as well as Sanders' identification card.

[11] The State ultimately charged Sanders with attempted murder, a Class A felony,[1] possession of a handgun without a license, a Class A misdemeanor,[2] and battery, a Class C felony. A jury found Sanders guilty as charged. Sanders then pleaded to being an habitual offender.[3] The court vacated the battery verdict on double jeopardy grounds and sentenced Sanders to sixty years executed.

# Discussion and Decision

[12] In reviewing a challenge to the sufficiency of the evidence, Justice Hunter once wrote that appellate courts have a duty to "prob[e] and sift[ ]" the evidence to ensure that "the residue of facts warrants a conviction" by supporting each material allegation of a crime by substantial evidence. *Smith v. State*, 270 Ind.

---

[1] Ind. Code §§ 35-41-5-1 (1977), 35-42-1-1 (2007).

[2] Ind. Code § 35-47-2-1 (2012).

[3] Ind. Code § 35-50-2-8 (2005).

479, 481, 386 N.E.2d 1193, 1195 (Ind. 1979). More recently, the Indiana Supreme Court restated this standard as requiring affirmance unless no reasonable trier of fact could have found each of the elements of a crime proven beyond a reasonable doubt. *Smith v. State*, 8 N.E.3d 668, 679 (Ind. 2014).

[13]    Sanders does not dispute that he was at the club on December 14, 2013. He says that there was not enough evidence to establish that he was the person who shot the victim.

[14]    There surely must be very few attempted murder trials in which the prosecution presents GPS evidence, ID card scans, and video of the defendant pulling the trigger. We conclude that a reasonable jury could find this proof of guilt beyond a reasonable doubt.

[15]    For the foregoing reasons, we affirm the judgment of the trial court.

[16]    Affirmed.

Kirsch, J., and Brown, J., concur.