## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 13 2016, 6:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Frederick Vaiana
Voyles Zahn & Paul
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher Bell, *Appellant-Defendant,* | April 13, 2016 |
| v. | Court of Appeals Case No. 49A02-1506-CR-683 |
| | Appeal from the Marion Superior Court |
| State of Indiana, *Appellee-Plaintiff* | The Honorable Lisa F. Borges, Judge |
| | Trial Court Cause No. 49G04-1312-MR-76743 |

**Crone, Judge.**

# Case Summary

Christopher Bell and Adrian Anthony robbed Robbie Gibson ("Robbie") and Ron Gibson ("Ron"). During the robbery, Anthony shot and killed Robbie. The State charged Bell with one count of felony murder and one count of class A felony robbery. A jury found him guilty as charged. The trial court vacated the robbery conviction and sentenced him for felony murder. On appeal, Bell argues that there is insufficient evidence to prove that he committed felony murder. We disagree and affirm.

# Facts and Procedural History

The facts most favorable to the conviction follow. Shortly after noon on November 27, 2013, Robbie and Ron were remodeling the front porch of a duplex. Two men, later identified as Bell and Anthony, walked up to where Robbie and Ron were working. Anthony was wearing a black button-down shirt and Bell a black hoodie. Anthony asked the two brothers for a cigarette, and Ron responded that they did not have any. Next, Anthony asked them for marijuana, and Ron again responded that they did not have any. Bell and Anthony then walked away from where Ron was standing and toward Robbie. When Anthony got to the top step on the porch, he pulled out a pistol and told the Gibsons "it was a robbery." Tr. at 23. Anthony put the pistol in Robbie's side, grabbed his wallet, and handed the wallet to Bell. Bell moved closer to Robbie to prevent him from leaving the porch, while Anthony put the pistol against Ron's neck and demanded Ron's cell phone.

[3] A truck approached the duplex, and Anthony asked Ron, "Is that your boss?" *Id*. at 31. Ron lied, said that it was, and started yelling and waving at the truck. As the truck slowed down and approached the duplex, Bell "took off" running, and Ron did the same. *Id*. Ron heard a gunshot, followed by, "Ronnie, he shot me." *Id*. at 31-32. Ron ran back to his brother, as Anthony ran off the porch. Gale Boggs, Robbie's mother, came out of her house across the street and saw the two men wearing black running away. She ran to the porch and held Robbie until the ambulance arrived. Robbie was later pronounced dead. Robbie's wallet was later found in the street; Gale took the wallet into her house.

[4] Indianapolis Metropolitan Police Department Officers Mark Decker, Augustin Nowak, and Ross Allison were among the first officers who responded to the scene. Officer Allison received description information regarding the suspects from Officer Decker and asked for other responding officers to set up a two- to three-block perimeter around the crime scene. Officer Michael Roach heard the dispatch and saw two men matching the description of the suspects running toward him. Anthony tried to enter a nearby church, and Bell took off his hoodie and threw it on the ground. Officer Roach drew his gun and ordered them to the ground. Both initially complied, but Anthony ran away. Bell was detained until other officers arrived with Ron for a show-up identification. Officer Decker drove Ron to three locations to perform show-up identifications on Bell and two other suspects. When Ron was asked whether Bell was one of the perpetrators, he replied that Bell "looked like him but he had a different …

he had a hoodie on." *Id*. at 36. Bell was released after Ron failed to identify him as one of the perpetrators. On November 28, Bell purchased a Greyhound bus ticket in Indianapolis and traveled to Terre Haute.

[5] Sergeant Mark Hess of the Indianapolis Metropolitan Police Department fugitive task force was asked to track Ron's missing cell phone. After obtaining a warrant, Sergeant Hess received location information about the phone, which included a timing analysis called "precision location." *Id*. at 245. "Precision location" is an automated system that determines the precise location of a cell phone, rather than merely locating the nearest cell tower. *Id*. On November 28, Sergeant Hess tracked Ron's stolen cellphone from an Indianapolis bus station to a Terre Haute apartment that matched Bell's address. When the police arrived, Bell ran to a room in the back of the apartment, where the cell phone was ultimately found. Bell's DNA was later found on the cell phone.

[6] Bell was arrested and transported to Indianapolis. The State charged Bell with one count of felony murder and one count of class A felony robbery and also charged Anthony with murder, felony murder, robbery, and carrying a handgun without a license. At trial, Ron identified both Bell and Anthony as the perpetrators of the robbery and killing of Robbie. The jury was instructed on the theory of accomplice liability and found Bell and Anthony guilty as charged. The trial court vacated Bell's robbery conviction and sentenced Bell to forty-five years in the Department of Correction. This appeal ensued.

# Discussion and Decision

[7] Bell argues that there is insufficient evidence to support his conviction for felony murder. When reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. *Bailey v. State*, 979 N.E.2d 133,135 (Ind. 2012). We consider only the evidence favorable to the verdict and all reasonable inferences therefrom. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). "[W]e affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Bailey*, 979 N.E.2d at 134.[1]

[8] Someone who kills another person while committing or attempting to commit robbery commits murder, a felony. Ind. Code § 35-42-1-1. A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person has not been prosecuted for the offense, has not been convicted of the offense, or has been acquitted of the offense. Ind. Code § 35-41-2-4. "An individual who aids, induces, or causes the commission of a crime is equally as culpable as the person who actually commits the offense." *Brooks v. State*, 895 N.E.2d 130, 133

---

[1] Bell asks us to "probe and sift the record to truly determine whether the evidence supports his conviction beyond a reasonable doubt." Appellant's Br. at 14 (quoting *Smith v. State*, 270 Ind. 479, 480, 386 N.E.2d 1193, 1194 (1979)). The "probe and sift" language does not require any deviation from the sufficiency standard. *Jennings v. State*, 553 N.E.2d 191, 192 (Ind. Ct. App. 1990). The request to probe and sift the record is merely a suggestion to reweigh the evidence and judge witness credibility, which we must decline. Also, Bell's reliance on *Layman v. State*, 42 N.E.3d 972 (Ind. 2015), is misplaced because that case involved the death of a co-perpetrator.

(Ind. Ct. App. 2008). When determining whether a person aided in the commission of a crime, a trier of fact considers factors such as the person's presence at the scene of the crime, companionship with another engaged in criminal activity, failure to oppose the crime, and the person's conduct before, during, and after the occurrence of the crime. *Garland v. State*, 719 N.E.2d 1236, 1238 (Ind. 1999). It was not required that Bell be charged as an accomplice; accomplice liability is not established as a separate crime, but merely as a separate basis of liability for the crime charged. *Suggs v. State*, 883 N.E.2d at 1188, 1192 (Ind. Ct. App. 2008). "[A] defendant may be convicted on evidence of aiding or inducing even though the State charged the defendant as the principal." *Id.*

[9] First, Bell contends that there is not a sufficient nexus which connects him to the crime. Bell ignores the fact that the jury was instructed on accomplice liability, and his argument is largely premised on the assumption that he was convicted as a principal. Bell was present at the scene of the crime and had companionship with the individual who engaged in criminal activity. Bell and Anthony approached the duplex where Ron and Robbie were working. Bell stood beside Anthony when Anthony brandished a pistol and declared that "it was a robbery." Tr. at 23. Bell failed to oppose the crime and moved closer to Robbie to block him from leaving. Anthony took Robbie's wallet and Ron's cell phone and handed them to Bell. Ron's stolen cell phone was tracked to the Greyhound bus station, where Bell purchased his bus ticket. Officers continued

to track the stolen cell phone and ultimately found it in Bell's apartment in Terre Haute.

[10] Bell also asserts that Ron Gibson gave inconsistent statements and, more specifically, that he failed to positively identify Bell as a suspect, which in turn leaves the stolen cell phone as the only evidence connecting Bell to the crime. Regarding Ron's pretrial statement, he told the detective that Bell "looked like [one of the perpetrators] but he had a different … he had a hoodie on." *Id*. at 36. Ron's response at most suggests that he was unsure whether Bell, who had discarded his hoodie, was one of the perpetrators; his response was not an unequivocal denial of the possibility. Further, any inconsistencies in his statements are questions for the jury. *Emerson v. State*, 724 N.E.2d 605, 609 (Ind. 2000). The foregoing evidence is more than sufficient to establish that Bell aided in the robbery that led to Robbie's murder. Accordingly, we affirm Bell's conviction.

[11] Affirmed.

Vaidik, C.J., and Bailey, J., concur.