Kenneth M. SWARTZ, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 14A01–9112–CR–409.

Court of Appeals of Indiana,
First District.

Aug. 19, 1992.

Rehearing Denied Oct. 29, 1992.

Susan K. Carpenter, Public Defender, Cynthia Maricle Russell, Deputy Public Defender, Office of Public Defender, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

BAKER, Judge.

Defendant-appellant Kenneth M. Swartz appeals his conviction for rape, a Class B felony.[1]  He raises five issues for our review, which we restate as:

I.   Whether the photographic lineup was impermissibly suggestive and raised a substantial likelihood of misidentification.

II.   Whether the trial court impermissibly allowed the State to introduce evidence of Swartz's prior rape conviction to impeach one of the defense witnesses on cross-examination.

III.   Whether prosecutorial misconduct during final argument was fundamental error.

IV.   Whether the trial court erred when it gave the State's tendered jury instruction on motive.

---

1.   IND.CODE 35–42–4–1(a).

V. Whether Swartz received ineffective assistance of counsel.

We affirm.

## FACTS

On September 27, 1987, J.G. spent the evening with two friends at Alford's Bar in Vincennes and then stopped at a grocery store before returning home at about 1:30 a.m. She expected her boyfriend to come by when he returned from hunting, so she left the front door unlocked and went to bed. Sometime later, she awoke to find a man, whom she later identified to be Swartz, standing by her bed "playing with himself." *Record* at 148–49. When J.G. tried to get up, the man jumped on top of her. She reached to turn on a lamp on the shelf behind her, and, in the light, she was able to see Swartz's face for five to ten seconds before he shattered the lamp.

Swartz removed J.G.'s panties and performed cunnilingus. He was aggressive and J.G. experienced great pain. She begged him to stop, but he began to have sexual intercourse. Swartz then asked for a "blow job." When J.G. refused, he retorted that she did not have a choice and that she would not be harmed if she did as he said. Swartz grabbed J.G.'s head and forced her face to his penis. At that time, she saw Swartz's semi-flaccid penis was uncircumcised. Swartz forced her to perform oral sex, and then he had sexual intercourse again before he retreated from the house. Immediately after he departed, J.G. heard a loud muffler; and she remembered she heard a similar sound when she first arrived home. She called family members and then summoned the police. The next afternoon at approximately 2:00 p.m., Swartz called J.G. and apologized for the attack.

During their investigation, the police found a pack of Cambridge cigarettes Swartz had left in J.G.'s bedroom. A slip of paper with a woman's name and phone number was inside the pack. The police traced the name and number to D.W., who identified the paper and said she had given it to Swartz while she was at a bar in Vincennes on the night of September 27, 1987. D.W. recalled that she watched Swartz put the paper in his pack of Marlboro cigarettes, although he told her at the time he usually smoked Cambridge cigarettes.

J.G. identified Swartz, both in a photographic lineup and again at trial, as the man who had raped her. The jury found Swartz guilty of rape, and the trial court sentenced him to a term of 15 years' imprisonment. On January 18, 1991, Swartz filed a verified motion for relief from judgment and a request for permission to file a belated motion to correct error. The court granted Swartz permission to file the belated motion, conducted a hearing, and on September 6, 1991, denied Swartz's belated motion to correct error. He now appeals that denial.

## DISCUSSION AND DECISION

### I

### *Photographic Lineup*

The photographic lineup contained six photographs. When the police officer showed J.G. the array, she asked to see the men's shoulders, which were not pictured originally. The officer obtained pictures that showed the men's faces and shoulders, and J.G. identified Swartz as the man who raped her. Swartz now complains that when the muscular build of the men was the characteristic J.G. tried to identify, the lineup was impermissibly suggestive. He also asserts the identification was impermissibly suggestive because his photograph was the only one with a white sheet backdrop. Furthermore, he argues the array was impermissibly suggestive because some of the individuals were easily discounted, as J.G. stated that she recognized one of the men, one was "considerably older," and one had a "wild eye."

■ A photographic lineup is impermissibly suggestive when, under the totality of the circumstances, it raises a substantial likelihood of misidentification. *Dumbsky v. State* (1987), Ind., 508 N.E.2d 1274, 1277. In this case, J.G. identified Swartz from a photographic pool of six white males who

were similar to one another in age, facial hair, and upper body build. Swartz's argument the lineup was improper because of Swartz's build is simply without merit.

■ After examining the photographic array in this case, we find the white sheet backdrop in Swartz's photograph was very similar to the white cinderblock backgrounds in the other five photographs. The difference, if any, was barely discernible and certainly was not impermissibly suggestive. *See Opfer v. State* (1985), Ind., 482 N.E.2d 706, 709 (backgrounds of various colors did not create unduly suggestive array.)

■ Swartz's argument that the photographic lineup was impermissibly suggestive because some of the men were easily eliminated also fails. This court has held held that there is no set number of photographs that must be shown to the eyewitness making the identification. *Bennett v. State* (1981), Ind.App., 416 N.E.2d 1307, 1310. "[E]ven the use of one picture ... is not per se impermissibly suggestive." *Id.* Whether the lineup was impermissibly suggestive is determined by the totality of the circumstances. *Id.* In this case, Swartz points to J.G.'s testimony that she recognized one of the men as her ex-husband's friend, and she knew he was not her attacker. Swartz also argues that two of the men were easily eliminated because one was "considerably older" and one had a "wild eye." Presumably, therefore, J.G. had a one in three chance of identifying Swartz's photograph. We disagree with Swartz's characterization of the facts, however, so we need not address whether the array Swartz described would have been impermissibly suggestive.

■ J.G. did not indicate which man was her ex-husband's friend, so it may have been one of the men Swartz describes as "considerably older" or as having a "wild eye." Furthermore, we find the description "considerably older" to be inaccurate, and we fail to understand why the "wild eye" characteristic eliminated that man from J.G.'s consideration. Mere variation in individual appearances does not render a photographic array impermissibly suggestive. *Webster v. State* (1991), Ind.App., 579 N.E.2d 667, 670. The photographic lineup was not impermissibly suggestive.

## II

### Evidence of Prior Conviction

■ Swartz also argues the trial court erred when it allowed the State to impeach a defense witness with evidence of Swartz's prior rape conviction. The trial court granted Swartz's motion to suppress and motion in limine excluding evidence of Swartz's prior convictions from the State's case in chief. Notwithstanding the order, the State introduced the evidence, without a timely objection, during cross-examination of Swartz's wife, Annabell.

Generally, evidence of one crime may not be used to prove another. *Equia v. State* (1984), Ind.App., 468 N.E.2d 559, 568. When the defendant presents evidence as to his good character, however, the State may refute that evidence on cross-examination "by offering evidence of the defendant's bad character, including specific acts of prior misconduct and past crimes." *Id.* at 568. In this case, the defense asked Swartz's wife on direct examination:

Q. During the period of time that you knew Mike, had been married to Mike, did you have any glimpse of him ever doing anything such as this that has been alleged that he did?

A. No.

*Record* at 429.

On cross-examination, the State revisited Annabell's earlier testimony:

Q. Now, Mr. Leonard asked you specifically, did you know or have ever—knew anything about your husband that would—I think he used the term similar to this, to this crime, do you know anything about that?

A. Well, I learned that later on, but we never really talked about it that much.

Q. Okay. And, specifically, what was that?

A. Well, he told me later on that he was with some girl that his wife knew and he knew, and they were all living in the

same trailer park, and he was accused—he was arrested on the same charge years ago.

Q. A rape charge?

A. Yes.

*Record* at 435. Swartz testified later and admitted he pleaded guilty to the rape and sodomy charge and was placed on six years of probation.

When Swartz elicited testimony from his wife in which she suggested this was the first time Swartz had ever been accused of rape, he opened the door for the State to ask on cross-examination whether she was aware Swartz had been charged before with rape. *See Equia, supra,* at 568. The trial court did not err in allowing the impeachment.

### III

#### *Prosecutorial Misconduct*

██ Swartz also appeals specific acts of prosecutorial misconduct that occurred during the State's final argument. Although Swartz failed to make timely and specific objections to the alleged misconduct, he argues the issues are not waived because the misconduct was fundamental error. This court has said that error in a criminal prosecution is fundamental error if it denies the defendant fundamental due process and is so prejudicial to the defendant's rights that the defendant could not have gotten a fair trial. *Spindler v. State* (1990), Ind.App., 555 N.E.2d 1319, 1321.

██ Prosecutors are entitled to respond to allegations and inferences raised by defense even if the prosecutor's response would otherwise be objectionable. *Lopez v. State* (1988), Ind., 527 N.E.2d 1119, 1126. In this case, Swartz suggested in his final argument that only guilty defendants plead guilty, and guilty defendants do not cooperate with the police as Swartz had cooperated. The prosecutor responded in his final argument:

Use your common sense, people don't always act the same, different people do different things for different reasons. It doesn't fit the profile or whatever, or I think he said a typical criminal in this case. Ted Bundy that just got put to death didn't fit the description of a typical criminal either. I don't know that there is a typical criminal. Ted Bundy didn't do anything until he got found guilty of how many murders? Finally confessed even more before they put him to death. There isn't any typical criminal. People do things for different reasons....

*Record* at 647–49. Swartz complains the statement was improper because it suggested that someone charged with a sex crime should not be believed. This inference, Swartz argues, was not based on evidence in the record. He also complains the prosecutor's reference to Ted Bundy was made in an effort to inflame the jury's passions and prejudices.

Regardless of whether the prosecutor's comments would otherwise be improper, the comments were a proper response to Swartz's assertions about how guilty and innocent defendants behave. As our supreme court recently recognized, "[l]itigation is as much art as it is science and decisions about how to proceed are very fact-sensitive." *Scott v. State* (1992), Ind., 593 N.E.2d 198, 201. Here, the State did nothing more than rebut the defendant's loose analysis of the facts. Swartz has failed to show error.

Swartz also alleges the prosecutor committed fundamental error when he stated that J.G. was a "law abiding citizen;" explained why J.G. "went limp and cooperated [when Swartz attacked her];" reminded the jury that Swartz admitted he lied to the court in an earlier rape and sodomy prosecution; suggested the testifying police officer had nothing to gain by his testimony; accused the defense of attacking the quality of the police investigation only because the defense had neither facts nor law on its side; and commented on Swartz's friend's failure to testify about Swartz's activities the night J.G. was raped. Swartz fails to show how these comments were improper. Even if the comments were improper, however, Swartz's bare assertions of error, without supporting authority, render the

issues waived. *Reed v. State* (1985), Ind., 479 N.E.2d 1248, 1253.

Finally, Swartz argues the prosecutor committed fundamental error when he stated that "the uncontroverted evidence has been that he is uncircumcised. There's not that many males, particularly in his age group, that are not circumcised." *Record* at 615. It is improper in final argument to comment upon facts not disclosed by the evidence. *Howey v. State* (1990), Ind., 557 N.E.2d 1326, 1330. In this case, there was no evidence in the record to show how many males are circumcised. The State argues the comment was proper, however, because "[t]he jury's own experiences would be that most men in this country are in fact circumcised." *Appellee's Brief* at 7. We do not agree that the number of males who are circumcised was necessarily within the jury's common knowledge. Even assuming the comment was erroneous, however, Swartz must still show the comment was so prejudicial he could not have gotten a fair trial. In light of the substantial evidence of Swartz's guilt, including the victim's eye-witness identification, we conclude Swartz was not prejudiced by the comment. Without a showing of prejudice, Swartz has failed to prove the misconduct was fundamental error. *Spindler, supra,* at 1321.

### IV

#### *Jury Instruction on Motive*

■ The court gave the following final instruction over defense counsel's objection: "The State is not required to prove that the accused had a motive—that is, some understandable reason—for committing the crime with which he is charged." *Record* at 65. Swartz complains the instruction was improper because motive was not an element of rape, and he was prejudiced because the instruction improperly bolstered the State's theory of the case. We disagree.

Our supreme court has found the instruction complained of here to be an accurate statement of the law, and has upheld giving the instruction when motive was not an element of the charged crime. *Light v.*

*State* (1989), Ind., 547 N.E.2d 1073, 1081, *trans. denied.* There was no error.

### V

#### *Ineffective Assistance of Counsel*

Swartz also alleges four grounds to show he was denied effective assistance of trial counsel. He argues his counsel was ineffective for failing to interview or subpoena a defense alibi witness, for failing to object the "unduly suggestive" photographic array, for failing to object when the State introduced evidence of Swartz's prior rape conviction during cross-examination of Swartz's wife, and for failing to object to prosecutorial misconduct.

■ When challenging the competency of counsel, the defendant must present strong and convincing evidence to rebut the heavy presumption that counsel was competent. *Williams v. State* (1987), Ind., 508 N.E.2d 1264. To be successful, the defendant must show counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. The defendant must also show that counsel's failure to function was so prejudicial that, but for the unprofessional representation, the result would have been different. *Id.* When making our determination, the appellate tribunal may not speculate about what may have been the most advantageous strategy, as isolated bad tactics or inexperience do not necessarily amount to ineffective assistance of counsel. *Haggenjos v. State* (1986), Ind., 493 N.E.2d 448, 451.

#### A) *Failure to Interview or Subpoena a Defense Witness*

■ First, Swartz argues he received ineffective assistance of counsel when his attorney failed to interview or subpoena Swartz's employer, Mark Baker, who Swartz asserts was a crucial alibi witness. J.G. testified that the man who raped her called her at approximately 2:00 p.m. the next day and apologized for the way he "broke in on" J.G. the night before.

*Record* at 164. Swartz argues Baker would have proved Swartz did not make the phone call because, when the call was made, Swartz and Baker were working together at a construction site with no access to a telephone.

To support his assertion, Swartz submitted Baker's affidavit at the hearing on his motion to correct error. The affidavit stated, in relevant part:

3. I remember the day Kenneth Swartz was arrested. Kenneth Swartz was working with me on a broken backhoe. To the best of my recollection Swartz and I were also working together on Sunday, the day before Swartz's arrest, because when a piece of equipment such as the backhoe is not working, Swartz and I worked over weekends to get the equipment working. When working on weekends we normally did not take breaks and worked until it was dark.

4. There was no phone available at the construstion (sic) site where we were working.

5. I was living in Wheatland, Indiana, in February of 1989, and I would have testified for Swartz a his trial. I do not know whether I was in Daviess County on the actual days of the trial, but I would have been available to testify had I known I was needed. No one ever contacted me about this case; I received no subpoena.

*Supplemental Record* at 78.

At the hearing on Swartz's motion to correct error, Swartz's trial counsel was asked whether he considered subpoenaing Baker for trial. Counsel replied, "Seems to be, he disappeared, if I remember right. We could not locate him because he had moved on, and I don't remember exactly the circumstances. We attempted, but we could not find him." *Supplemental Record* at 82. Swartz asserts the failure to subpoena Baker was not a tactical decision, but rather, it was ineffective assistance and denied Baker the opportunity to present evidence crucial to his defense.

A close reading of Mr. Baker's affidavit reveals that he did not claim Swartz could not have made the call, but only that he "normally" would not have had an opportunity to do so. Because the phone call was extremely brief, and because Baker could not provide an unequivocal alibi, the State would have had ample leeway to argue that at 2:00 p.m. on that Sunday afternoon, Swartz found a brief opportunity to make a phone call. Although his trial counsel probably should have contacted Baker, Swartz has failed to show Baker's testimony would have changed the outcome. Because he has failed to show he was prejudiced by his counsel's representation, and his claim of ineffective assistance must fail.

B) *"Unduly Suggestive" Photographic Array*

Swartz also alleges his counsel was ineffective for failing to object to the "unduly suggestive" photographic array. Swartz's argument fails, however, because, as addressed in Issue I above, the photographic array was proper. Counsel was not ineffective for failing to object to a proper array.

C) *Evidence of Swartz's Prior Rape Conviction*

Swartz argues next he received ineffective assistance of counsel when his counsel failed to object when the State introduced evidence of his prior rape conviction to impeach his wife's testimony on cross-examination. As addressed in Issue II, the evidence was properly admitted because Swartz opened the door on direct examination to evidence about prior rape accusations. *See Equia, supra.* Swartz's counsel was not ineffective for failing to object to testimony properly admitted.

D) *Failure to Object to Prosecutorial Misconduct*

Swartz also asserts his counsel was ineffective for failing to object to the alleged prosecutorial misconduct addressed in Issue III. As to the comments we concluded were proper, Swartz's assertion of ineffective assistance of counsel for failing to object to the prosecutorial comments is without merit. Counsel was not ineffective

for failing to object to proper final arguments.

Swartz also argues his counsel was ineffective for failing to object to the prosecutor's statement that "the uncontroverted evidence has been that he is uncircumcised. There's not that many males, particularly in his age group, that are not circumcised." *Record* at 615. As we concluded in Issue III above, the comment was erroneous. It is improper in final argument to comment upon facts not disclosed by the evidence, *Howey, supra,* at 1330, and in this case, there was no evidence in the record to show how many males in Swartz's age group are circumcised.

Even though the comment was improper, however, Swartz must show his counsel was ineffective for failing to object to the comment, and that the outcome would have been different but for the unprofessional conduct. *See Williams v. State* (1987), Ind., 508 N.E.2d 1264. At the hearing on Swartz's motion to correct error, Swartz's trial counsel stated that he did not object to the comment because it "inflames the jury when you start objecting [to opening and closing arguments]." *Supplemental Record* at 90. We will not second guess counsel in his choice of trial strategy. *Haggenjos, supra,* at 451. Furthermore, in light of the substantial evidence of Swartz's guilt, including the victim's eyewitness identification, Swartz has failed to show that even if his counsel's performance was ineffective, the outcome would have been different had his counsel made a proper objection.

The judgment is in all things affirmed.

RATLIFF, C.J. and SHIELDS, J., concur.