London T. CLAYTON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 45A04–9412–CR–475.

Court of Appeals of Indiana.

Sept. 7, 1995.

Order Clarifying Decision Sept. 22, 1995.

Mark A. Bates, Appellate Public Defender, Crown Point, for appellant.

Pamela Carter, Attorney General, Jodi Kathryn Rowe, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

London T. Clayton appeals his convictions of kidnapping,[1] burglary,[2] robbery,[3] and confinement,[4] and the sentences thereon. We affirm in part and reverse in part.

1. Ind. Code 35–42–3–2.

2. Ind. Code 35–43–2–1.

### ISSUES

I. Whether Clayton was denied effective assistance of counsel.

II. Whether the trial court erred in sentencing Clayton.

III. Whether there was sufficient evidence to support Clayton's conviction of kidnapping.

### FACTS

At approximately 9:00 p.m. on March 17, 1993, Becky Ann Chitwood returned home from a friend's house. Chitwood's two and one-half year old son, Derrick, and two and one-half year old niece, Ashley, were asleep in car seats in the back seat of Chitwood's car. After Chitwood had unloaded the children's toys and diaper bags, she got in the back seat of the car and started to unbuckle Ashley's seat belt. While unbuckling Ashley, Chitwood looked up and saw a man running towards her. The man, whom Chitwood later identified as London T. Clayton, was carrying a gun.

Clayton approached Chitwood, pointed the gun at her head, ordered her to give him her money, and asked her where he could find her purse. Chitwood told Clayton that her purse was in the house. Because she feared that Clayton would shoot her if she did not allow him into her house to get her purse, Chitwood grabbed Ashley, removed her from the car and went into the house. Clayton pointed his gun at Chitwood's back as she went inside.

When Clayton, Chitwood and Ashley got inside the house, where the living room light was on, Clayton went through Chitwood's purse. He became angry when he could not find any money, and he dumped the purse's contents on the floor. Clayton then ordered Chitwood to go back outside. When Clayton and Chitwood got outside, Clayton ordered Chitwood to place the car keys into the ignition of her car. Chitwood returned to the house, removed the keys from the front door, and returned to the car. Clayton stood next

3. Ind. Code 35–42–5–1.

4. Ind. Code 35–42–3–3.

to Chitwood as she placed her keys in the ignition, and ordered Chitwood to "get [her] damn kid out of the car." (R. 209). As Chitwood unbuckled Derrick's seat belt, Clayton pointed a gun at her and ordered her to hurry up. Chitwood unbuckled Derrick, got out of the car with him, and ran inside the house. She immediately called "911," and Lake County Police Department officers arrived within five minutes. Chitwood gave the officers a description of the assailant. Chitwood later identified Clayton in a photo array.

Clayton was convicted of kidnapping, burglary, robbery and confinement. He was sentenced to 45 years for kidnapping, 15 years for burglary, 15 years for robbery, and 7 years for confinement, the kidnapping and robbery sentences to run consecutively. He now appeals and argues that: 1) he was denied effective assistance of counsel, 2) the trial court erred in sentencing him, and 3) there was insufficient evidence to support his kidnapping conviction.

## DECISION

### I. *Ineffective Assistance of Counsel*

 Ineffective assistance of counsel claims are judged by the standard set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *Lawrence v. State* (1984), Ind., 464 N.E.2d 1291, 1294. A claim of ineffective assistance of counsel is subject to a two-part test. In order to prevail, Clayton must show that: 1) his counsel's performance fell below an objective standard of reasonableness, and 2) there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *See Mott v. State* (1989), Ind., 547 N.E.2d 261, 263. Isolated poor strategy, inexperience or bad tactics will not necessarily amount to ineffective assistance of counsel. *Wilson v. State* (1990), Ind.App., 565 N.E.2d 761, 765.

Clayton argues that he received ineffective assistance of counsel because "counsel did not act promptly in developing the necessary alibi defense." Clayton's Brief, p. 21. Specifically, Clayton argues that counsel failed to investigate Clayton's alibi witnesses and waited until the morning of trial to add the witnesses to Clayton's witness list. According to Clayton, "[d]efense counsel's failure to act promptly resulted in the loss of developing these witnesses' testimony so as to create reasonable doubt as to the defendant's whereabouts on the night of the crime." Clayton's Brief, p. 20. We disagree.

This court rejected a similar argument in *Swartz v. State* (1992), Ind.App., 597 N.E.2d 977, *reh'g denied, trans. denied,* wherein Swartz argued that he received ineffective assistance of counsel because his attorney failed to interview or subpoena his employer, a "crucial alibi witness." *Id.* at 982. In *Swartz,* the victim testified that the man who raped her called her at approximately 2:00 p.m. the next day and apologized for the way that he "broke in on" her the night before. *Id.* at 982. Swartz argued that his employer would have proved that Swartz did not make the phone call because Swartz and his employer were working together at a construction site with no access to a telephone when the call was made. In support of his assertion, at the hearing on his motion to correct error, Swartz submitted an affidavit from his employer. The affidavit stated in pertinent part as follows:

3. I remember the day Kenneth Swartz was arrested. Kenneth Swartz was working with me on a broken backhoe. To the best of my recollection Swartz and I were also working together on Sunday, the day before Swartz's arrest, because when a piece of equipment such as the backhoe is not working, Swartz and I worked over weekends to get the equipment working. When working on weekends we normally did not take breaks and worked until it was dark.

4. There was no phone available at the construstion [sic] where we were working.

5. I was living in Wheatland, Indiana, in February of 1989, and I would have testified for Swartz at his trial. I do not know whether I was in Daviess County on the actual days of the trial, but I would have been available to testify had I known I was needed. No one ever contacted me about this case; I received no subpoena.

*Id.* at 983. The trial court denied Swartz's motion to correct error and, on appeal, Swartz argued that he had received ineffective assistance of counsel.

We disagreed and found that a close reading of Swartz's employer's affidavit revealed that he did not claim Swartz could not have made the call, but only that he "normally" would not have had an opportunity to do so. *Id.* at 983. We further found that because the phone call was extremely brief, and because the employer could not provide an unequivocal alibi, the State would have had ample leeway to argue that Swartz found a brief opportunity to make that phone call at 2:00 p.m. We noted that although Swartz's trial counsel probably should have contacted Swartz' employer, Swartz had failed to show that his employer's testimony would have changed the outcome. Further, because Swartz failed to show that he was prejudiced by his counsel's representation, his claim of ineffective assistance of counsel had to fail.

Here, defense counsel filed an alibi witness list on the morning of trial. The trial court questioned defense counsel regarding the late filing of the witness list, and counsel explained that he had just received the information from Clayton ten days ago. The State argued that it was now virtually impossible to investigate the out-of-state alibi and objected to the witnesses. After a lengthy discussion, the trial court ordered the State to depose the alibi witness who was present. The State then deposed Arthur Ingram, who testified that Clayton telephoned him from Wisconsin on the date of the offense. Ingram further testified that he visited Clayton in Wisconsin two days later. The State told the trial court the content of Ingram's deposition, and the trial court granted the State's motion to strike the witnesses.

A close reading of Ingram's deposition reveals that he did not claim that Clayton could not have committed the crimes for which he was charged. Rather, Ingram testified that Clayton telephoned him on the day of the offense. Ingram believed that Clayton was calling from Wisconsin because two days later, Ingram and his wife drove to Wisconsin to visit Clayton. Because Ingram could not provide an unequivocal alibi, the State would have had ample leeway to argue that Clayton was not in Wisconsin on the day of the offense, and that he could have telephoned Ingram from anywhere. Although trial counsel probably should have contacted Ingram, Clayton has failed to show that Ingram's testimony would have changed the outcome. Because Clayton has failed to show that he was prejudiced by his counsel's representation, his ineffective assistance of counsel claim must fail.

## II. *Sentencing*

The trial court sentenced Clayton to 45 years for the class A felony kidnapping,[5] and 15 years for the class B felony robbery,[6] sentences to run consecutively. In addition, Clayton received 15 years for the class B felony burglary and 7 years for the class C felony confinement,[7] sentences to run concurrent with the kidnapping and robbery sentences. Clayton now argues that the trial court erred in sentencing him. We disagree.

The determination of a sentence rests with the discretion of the trial court. *Duvall v. State* (1989), Ind., 540 N.E.2d 34, 36. An appellate court will not alter a sentence authorized by statute unless the sentence is manifestly unreasonable in light of the offender and the offense. *Durbin v. State* (1989), Ind.App., 547 N.E.2d 1096,

5. Ind. Code 35–50–2–4 provides in pertinent part: A person who commits a Class A felony shall be imprisoned for a fixed term of twenty five (25) years, with not more than twenty (20) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances....

6. Ind. Code 35–50–2–5 provides in pertinent part: A person who commits a Class B felony shall be imprisoned for a fixed term of ten (10) years, with not more than ten (10) years added for aggravating circumstances or not more than four years subtracted for mitigating circumstances.

7. Ind. Code 35–50–2–6 provides in pertinent part: A person who commits a Class C felony shall be imprisoned for a fixed term of four (4) years, with not more than four (4) years added for aggravating circumstances or not more than two (2) years subtracted for mitigating circumstances.

1100. A sentence is manifestly unreasonable only if no reasonable person could find the sentence appropriate to the nature of the offense and the character of the offender. *Lockard v. State* (1992), Ind.App., 600 N.E.2d 985, 987, *trans. denied.*

The trial court's sentencing order states in pertinent part as follows:

> The reasons for the imposition of the sentence are as follows: Mandatory Considerations: The risk that the defendant will commit another crime is high because he has an extensive criminal history.... The defendant's prior criminal record is as follows: Porter County: 1986, Gun No Permit and False Informing with probation violation in 1988. In County Court: 1987, Possession of Gun No Permit with petition to revoke; 1990, Dealing in a Sawed–Off Shotgun (D), Battery and a pending Robbery (B) in this court.... Aggravating Circumstances: The defendant has recently violated the conditions of probation granted him by Porter County and Lake County Court. The defendant has a history of cirminal [sic] activity as previously stated. The defendant is in need of correctional and rehabilitative treatment that can best be provided by his commitment to a penal facility for the reason that his prior lenient treatment has had no deterrent effect. The victims in Count I were less than 12 years of age....

(R. 69–70).

■ Without authority for his proposition, Clayton contends as follows:

> During the sentencing hearing for Clayton, the trial court admitted State's Exhibit A, which was a police report stating that Clayton had been named by the victim of a robbery which occurred in January 1993. This matter went to trial but was later dismissed after the trial ended in a hung jury. Therefore, this evidence should not have been admitted as an aggravating factor.

(Citations omitted). Clayton's Brief, p. 22. Because Clayton has failed to provide us with authority to support his proposition, he has waived appellate review of this issue. *See, Salone v. State* (1995), Ind.App., 652 N.E.2d

552. Waiver notwithstanding, Clayton's argument must fail.

■ A trial court has broad discretion to consider aggravating factors. *O'Connor v. State* (1992), Ind.App., 590 N.E.2d 145, 149. This discretion includes consideration of arrests not yet reduced to conviction. *Id.* In *O'Connor*, we noted that although the statutory aggravating factor for criminal activity refers to the actual commission of a crime, not merely arrest, an arrest record is a valid aggravating factor. *Id.* Here, the trial court did not err in considering Clayton's "pending robbery in this court" as an aggravating factor in sentencing Clayton. (R. 69).

■ Further, the law is well settled that enhancement of presumptive sentences, along with the imposition of consecutive sentences, may be supported by a single aggravating circumstance. *Davidson v. State* (1990), Ind., 558 N.E.2d 1077, 1092. Here, the trial court identified several aggravating circumstances. The trial court did not err in sentencing Clayton.

### III. *Sufficiency of the Evidence*

Clayton argues that there is insufficient evidence to support his kidnapping conviction. We agree.

■ Our standard of review for sufficiency of the evidence is well-settled. We will neither reweigh the evidence nor judge the credibility of witnesses. We examine only the evidence most favorable to the judgment along with all reasonable inferences to be drawn therefrom, and, if there is substantial evidence of probative value to support the conviction, it will not be set aside. *Geans v. State* (1993), Ind.App., 623 N.E.2d 435, 437. However, there is an area within this judicial framework upon which this court cannot conscientiously close its eyes. *Smith v. State* (1979), 270 Ind. 479, 386 N.E.2d 1193, 1195. Our appellate responsibilities may require a probing and sifting of the evidence to determine whether the residue of facts warrants a conviction. *Id.* Where such residue fails to meet the requirement that each material allegation be supported by substantial evidence of probative value, we must so declare. *Id.*

Ind. Code 35–42–3–2 provides in pertinent part as follows:

> (b) A person who knowingly or intentionally removes another person, by fraud, enticement, force, or threat of force, from one place to another: ...
>
> (2) While hijacking a vehicle ...

commits kidnapping, a Class A felony.[8]

Our supreme court has defined hijacking as "exercising ... unlawful or unauthorized control of a vehicle by force or threat of force upon the vehicle's inhabitants." *Wilson v. State* (1984), Ind., 468 N.E.2d 1375, 1378, *reh'g denied.*

In the *Wilson* case, Wilson argued that there was insufficient evidence to support his conviction for kidnapping. Specifically, Wilson asked our supreme court to define the term hijacking as robbery of goods, or of both the vehicle and goods. According to Wilson, if our supreme court adopted his definition, the court had to reverse his conviction for hijacking because the State had failed to prove that there were goods in transit, and thus failed to prove the element of hijacking a vehicle. Our supreme court disagreed with Wilson and concluded as follows:

> Based upon the use of the term 'hijacking' in a statute designed to protect persons, the broad statutory definition of a vehicle subject to that action, and the current problems of which we are aware, we do not believe that the legislature intended to restrict kidnapping to those situations in which the vehicle was transporting goods.... We discern that the legislature had it in mind in enacting this part of the kidnapping statute to prevent persons from being exposed to that special danger, that increased probability of injury or death, which results when one is seized and confined or transported in a commandeered vehicle. The message intended for the would-be wrong doer, is that if you are going to steal or commandeer a vehicle, let

the people in it go and don't force people into it against their will.

*Id.*

Our review of the record reveals that Clayton did not expose Ashley and Derrick to "that special danger ... which results when one is seized and confined or transported in a commandeered vehicle." Rather, because Clayton allowed Chitwood to take the children in the house, the children were placed in less danger than they would have been if Clayton had forced them to remain in Chitwood's car.

We further note that the facts of this case are analogous to those in *Smith, supra*, wherein our supreme court found that there was insufficient evidence to support Smith's conviction for kidnapping. In *Smith*, the victim, Werner, was employed by Tidey's Truck Service as a secretary. On the morning of November 1, 1974, she was on an errand for her employer in her employer's truck. As she stopped at a stoplight in the center of town, she observed a pickup truck with two men in it stopped in another lane. One of the men, Smith, jumped out of the pickup truck and ran over to Werner's truck. Smith opened the door and the truck started rolling, so he jumped in, and started driving. When Smith stopped at another stoplight, Werner jumped out. Smith drove a half block further, parked the truck, and walked a few blocks to his house. Smith was convicted of kidnapping, and on appeal, he argued that there was insufficient evidence to support his conviction. We agreed.

We noted that kidnapping is a *malum in se* crime and requires that the element of intent be proved beyond a reasonable doubt. *Id.* Our review of the record revealed insufficient evidence of intent to support Smith's kidnapping conviction. Specifically, we noted that there was no evidence that Smith had used any force or threats to keep Werner in the truck against her will. In addition, Werner testified that Smith neither accosted nor threatened her. Further, Smith did not tell

---

8. Count I of Clayton's information provides in pertinent part as follows:

[O]n or about March 17, 1992, ... London Troy Clayton did knowingly or intentionally, and by fraud, enticement, force or threat of force, remove Ashley ... and Derrick ... from one place to another while hijacking a vehicle, contrary to IC 35–42–3–2 and against the peace and dignity of the State of Indiana. (R. 15).

Werner to stay in the truck nor did he try to prevent her from leaving.

Here, our review of the record reveals insufficient evidence of intent to support Clayton's kidnapping conviction. Specifically, there is no evidence that Clayton used any force to keep Ashley and Derrick in Chitwood's car against their will. We observe that the evidence reveals that Chitwood voluntarily, without fraud, enticement, force or threat of force, took Ashley into the house when she went to look for her purse. Subsequently, Clayton told Chitwood to remove Derrick from the car before driving away. In addition, Chitwood's testimony revealed that Clayton never threatened the children. Further, Clayton did not tell Chitwood to leave the children in the car nor did he try to prevent them from leaving. Rather, Clayton permitted Chitwood to remove Ashley and he ordered Chitwood to remove Derrick. There is insufficient evidence to support Clayton's kidnapping conviction.

Affirmed in part and reversed in part.

CHEZEM and NAJAM, JJ., concur.

## ORDER

This Court having heretofore on September 7, 1995 handed down its opinion in this appeal, marked "For Publication"; and

Comes now the appellee, by counsel, and files herein its Motion for Clarification alleging therein that the written opinion, at slip opinion, page 3, 7 and 8 refers to the offense of theft as one of the offenses of which the appellant was convicted and sentenced but that the record of the proceedings reflects that the appellant was convicted and sentenced for the offense of robbery rather than theft and prays the Court to correct said error in the opinion, which said Motion for Clarification is in the following words and figures, to-wit:

### (H.I.)

And the Court, having reviewed its opinion, having reviewed the record of the proceedings and being duly advised, now finds that the appellees Motion for Clarification is well taken and should be granted as prayed.

IT IS THEREFORE ORDERED as follows:

1. The appellees' Motion for Clarification is granted;

2. This Court's opinion handed down on September 7, 1995 in this cause is now corrected as follows:

 (a) Page 3, second full paragraph, lines 3 and 4, the words theft are changed to the words robbery;

 (b) Page 7, second paragraph, line 2, the word theft is changed to robbery;

 (c) Page 8, line 1, the word theft is changed to robbery.

3. With these corrections, the opinion is confirmed in all other respects.

[Editors Note: Corrections incorporated for purposes of publication.]