**John ZIMMERMAN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0205–CR–375.

Court of Appeals of Indiana.

April 4, 2003.

David Becsey, Zeigler Cohen & Koch, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant John Zimmerman appeals his conviction for Kidnapping,[1] a class A felony, claiming that: (1) the evidence was insufficient to support his conviction; (2) the jury was improperly instructed; and (3) he was improperly sentenced. As to the sufficiency claim, Zimmerman maintains that his conviction must be set aside because the State failed to adequately prove the requisite intent, inasmuch as he never used force or threatened force and he neither harmed nor threatened harm to the victim. Because we agree with Zimmerman that the State failed to sufficiently establish the elements of kidnapping, we reverse the conviction for that offense and need not address the remaining issues.

1. Ind.Code § 35–42–3–2.

## FACTS

The facts most favorable to the verdict are that on May 14, 2002, Zimmerman and another individual stole a video camera from an Indianapolis Wal–Mart store. Zimmerman then ran from the store, whereupon he noticed Nikki Robertson stopped at a red light. Zimmerman approached Robertson's vehicle, banged on the passenger door and told her that someone was trying to kill him. In response, Robertson unlocked her car door and permitted Zimmerman to enter. Another man approached Robertson and identified himself as a Wal–Mart security guard. Nonetheless, Robertson drove off and the security guard got into another car and began to follow her. Zimmerman then told Robertson to "lose the car" that was following and offered to pay for the ride. Tr. p. 27.

The Wal–Mart security guard eventually drove back to the store but Rob Shaw, another driver, saw Zimmerman enter the car. He also observed that Robertson appeared frightened. As a result, Shaw continued to follow Robertson's vehicle.

At one point during the ride, Robertson told Zimmerman that she wanted him to get out of her car because Zimmerman failed to give her an answer when she asked what had occurred. Zimmerman refused to leave, but he never brandished a weapon and did not threaten Robertson. There was no evidence that Robertson ever believed that Zimmerman was holding her hostage. Although Robertson felt scared, she continued driving, hoping that some other car would hit hers so she could finally stop. Even though Robertson could have stopped her vehicle and exited, she declined to do so because she did not

know what Zimmerman would do if she tried to leave.

Shaw continued to follow Robertson's vehicle and contacted the police. He also relayed the license number to the dispatcher and told them of Robertson's location. In response, the police eventually stopped Robertson's car at Thompson Road and State Road 135, whereupon they searched the vehicle and located the stolen Camcorder from Wal–Mart, along with some camera accessories.

Zimmerman was ultimately charged with theft, kidnapping, confinement and being a habitual offender. The information charging Zimmerman with kidnapping provided as follows:

> John Zimmerman, II, on or about, May 14, 2001, did knowingly, by fraud, enticement, force, or threat of force, remove Nikki Robertson from one place to another, that is: from the area of U.S. 31 and Hickory Road to the area of State Road 135 and Epler Avenue, while hijacking a vehicle.

Appellant's App. p. 26. Following a jury trial that commenced on February 25, 2002, Zimmerman was found guilty as charged. He was subsequently sentenced to thirty years for kidnapping and to one and one-half years on the theft charge,[2] that were ordered to run concurrently. The sentence for the theft conviction was enhanced under the habitual offender count by four years. The sentences were ordered to run concurrently and Zimmerman now appeals.

### DISCUSSION AND DECISION

 In addressing Zimmerman's challenge to the sufficiency of the evidence, we note that our standard of review for such claims is well-settled. We will not reweigh the evidence or assess the credibility of the witnesses. *Smith v. State*, 725 N.E.2d 160, 161 (Ind.Ct.App.2000). We consider only the evidence most favorable to the judgment, together with all reasonable inferences that can be drawn therefrom. *Alspach v. State*, 755 N.E.2d 209, 210 (Ind.Ct.App.2001), *trans. denied*. If a reasonable trier of fact could have found the defendant guilty based on the probative evidence and reasonable inferences drawn therefrom, the conviction will be affirmed. *Smith*, 725 N.E.2d at 161. Moreover, it is the jury's responsibility to weigh the evidence and decide what to believe and what not to believe. *Cohen v. State*, 714 N.E.2d 1168, 1179 (Ind.Ct.App. 1999), *trans. denied*.

Our kidnapping statute provides in relevant part that:

(a) A person who knowingly or intentionally confines another person:

. . .

(2) while hijacking a vehicle;

. . .

commits kidnapping, a Class A felony.

(b) A person who knowingly or intentionally removes another person, by fraud, enticement, force, or threat of force, from one place to another:

. . .

(2) while hijacking a vehicle;

. . .

commits kidnapping, a Class A felony.

---

**2.** The trial judge specifically stated that she would not enter a judgment against Zimmerman on the confinement charge.

In accordance with this statute, hijacking is defined as "exercising ... unlawful or unauthorized control of a vehicle by force or threat of force upon the vehicle's inhabitants." *Clayton v. State*, 658 N.E.2d 82, 87 (Ind.Ct.App.1995). Turning to the circumstances here, there is no evidence that Zimmerman accosted Robertson or made any threats to her in the event that she refused to continue driving him around town. To the contrary, Robertson unlocked her car door and permitted Zimmerman to enter. Tr. p. 13, 33. Robertson leaned over and unlocked the door because the automatic push button system was broken. Tr. p. 24–25. Moreover, Zimmerman never demanded that Robertson remain in the car, and there is no evidence that he ever prevented her from leaving. Robertson acknowledged that Zimmerman was polite and even thanked her for letting him ride in her vehicle. Tr. p. 26. Zimmerman did not display any weapons. Tr. p. 26. He did not strike her and he never took control of Robertson's vehicle. Tr. p. 26–27. To be sure, Robertson never believed that Zimmerman was holding her hostage. Tr. p. 30–31.

The evidence presented by the complaining witness's own testimony never gave rise to a reasonable inference or conclusion that Zimmerman confined Robertson or exercised any force, threat, fraud or enticement that was alleged by the State and necessary to prove under our kidnapping statute. Put another way, there was no evidence that Zimmerman controlled the vehicle by force or threat of force. Thus, there was no hijacking and Zimmerman's kidnapping conviction may not stand. *See Clayton*, 658 N.E.2d at 88 (holding that a conviction for kidnapping while hijacking a vehicle was not supported by evidence when it was demonstrated that the victim voluntarily removed her daughter from the automobile and that the defendant ordered the victim to remove her son from the automobile, yet there was no evidence showing that the defendant used force to keep the victim's daughter and son in the automobile).

Judgment reversed.

RILEY, J., concurs.

MATHIAS, J., dissents with opinion.

MATHIAS, Judge, dissenting.

I respectfully dissent because I believe the majority decision excludes the mens rea of "knowingly" from Indiana Code section 35–42–3–2.

### I. The Mens Rea of Kidnapping by Hijacking a Vehicle

The portion of Indiana Code section 35–42–3–2, relevant to this case, states,

> (b) A person who *knowingly* or intentionally removes another person, by fraud, enticement, force, or threat of force, from one place to another:
>
> (2) while hijacking a vehicle;
>
> commits kidnapping, a Class A felony.

Ind.Code § 35–42–3–2 (1998) (emphasis added).

Zimmerman contends that "[t]he crime of kidnapping is a *malum in se* crime and requires that the element of specific intent [be proven] beyond a reasonable doubt." Br. of Appellant at 5 (citing *Smith v. State*, 270 Ind. 479, 386 N.E.2d 1193, 1195 (1979)). Although the majority opinion does not discuss the mens rea of kidnapping or include a mens rea requirement when it defines "hijacking" as "exercising ... unlawful or unauthorized control of a

vehicle by force or threat of force upon the vehicle's inhabitants," the majority's opinion can only be explained by exclusively applying the mens rea of "intentionally" to the element of "hijacking" as suggested by *Smith.* Op. at 1160–1161 (citing *Clayton v. State,* 658 N.E.2d 82, 87 (Ind.Ct.App. 1995)).

When *Smith* defined kidnapping as a crime of *malum in se,* requiring the mens rea of "intent" to be proven beyond a reasonable doubt, it did so via interpretation of Indiana's kidnapping statute in effect at that time, Indiana Code section 35–1–55–1. *Smith,* 386 N.E.2d at 1194–95. Indiana Code section 35–1–55–1 provided:

> Whoever kidnaps, or forcibly or fraudulently carries off or decoys from any place within this State, or arrests or imprisons any person *with the intent* of having such person carried away from any place within this State, unless it be in pursuance of the laws of this State or the United States, is guilty of kidnapping, and on conviction, shall be imprisoned for life.

Ind.Code § 35–1–55–1 (Burns 1975) (emphasis added). Indiana's current kidnapping statute broadens the mens rea requirement to allow convictions upon proof of either intentional or knowing conduct. *See* Ind.Code § 35–42–3–2. Consequently, *Smith*'s exclusive requirement of "intent" is no longer good law.

Because Zimmerman gained access to Robertson's vehicle by "fraudulently" informing her that someone was trying to kill him, the element of "hijacking" is the heart of the dispute in this case. There is no independent mens rea requirement in the majority's definition of "hijacking" or in Indiana law. *See* Op. at 1160–1161; *see also Wilson v. State,* 468 N.E.2d 1375, 1378 (Ind.1984); *Clayton,* 658 N.E.2d at 87. As such, Indiana Code section 35–42–3–2's disjunctive mens rea of "knowingly" applies to the listed element of "hijacking" in kidnapping.

## II. Application

The majority states: (1) "[t]here is no evidence that Zimmerman *accosted* Robertson or *made any threats* to her in the event that she refused to continue driving him around town;" (2) "Zimmerman never *demanded* that Robertson remain in the car;" (3) "Zimmerman *did not display* any weapons;" and, (4) "[Zimmerman] did not *strike* [Robertson,] and he never *took control* of Robertson's vehicle." Op. at 1160–1161 (emphasis added).[3]

Referring to this evidence, the majority concludes that there was no evidence that Zimmerman controlled Robertson's vehicle by force or threat of force. I would hold that this lack of evidence is only suggestive of the absence of intentional conduct, and not of the absence of knowing behavior. I believe that the record shows that the eighteen-year-old Robertson was reasonably fearful of the possibility that Zimmerman would use force and, though no evidence shows that Zimmerman initially instilled this fear when he fraudulently gained entrance to Robertson's vehicle, the evidence does show that Zimmerman soon knew of Robertson's reasonable perception of fear after he refused to respond to her

---

**3.** The majority also notes that Robertson unlocked her car door for Zimmerman. Op. at 1160–1161. Although this is evidence that it was not Robertson's fear that initially caused her to stay in her vehicle and navigate in the manner in which she did, this evidence does not indicate that Robertson did not subsequently develop such a fear after Zimmerman refused to answer her questions or get out of her vehicle.

demand to exit. Furthermore, he clearly used this knowledge to make good his escape. Simply said, Robertson's actions went from a Good Samaritan effort to help a man that she perceived to be in danger to involuntarily helping Zimmerman evade the law.

Under the standard of review announced by the majority, considering only evidence favorable to the verdict and the reasonable inferences that can be drawn therefrom, I would hold that there is sufficient evidence in which a finder of fact could reasonably conclude that Robertson's fear of Zimmerman's potential use of force caused her to navigate her vehicle in the manner that she did and prevented her from exiting her vehicle. This evidence includes: (1) Robertson's testimony that, after allowing Zimmerman in her vehicle, she wanted him to get out; (2) Robertson's demand to Zimmerman that "I want to stop and let you out *now;*" (3) Robertson's testimony that she was scared; (4) Robertson's testimony that she was hoping to get hit by another car in order to get out of the situation; and, (5) Zimmerman's influence upon Robertson's driving destinations.

Tr. pp. 14–18 (emphasis added). A finder of fact could reasonably conclude from this testimony that Robertson's reasonable fear of Zimmerman's potential use of force, rather than her own volition, caused her to drive her vehicle from U.S. Highway 31 to State Road 135.[4]

There was also sufficient evidence for a finder of fact to reasonably conclude that Zimmerman, though not initially instilling fear in Robertson, came to know of Robertson's fear of him and that he used this fear to his advantage. Robertson informed Zimmerman that she wanted him to exit the vehicle, and Zimmerman failed to respond to this request. Tr. pp. 15–16. Rob Shaw, while tailing Robertson's car, noticed that Robertson looked visibly frightened.[5] Tr. pp. 34, 36. Evidence of Robertson's visible fear, in combination with Robertson's unfulfilled request for Zimmerman to leave her vehicle, is sufficient evidence for the finder of fact to reasonably conclude that Zimmerman knew of Robertson's fear and took advantage of it, thereby kidnapping Robertson by hijacking her vehicle.[6]

Because Robertson reasonably felt threatened by force, navigated her vehicle

---

4. The majority may understandably wish not to allow a kidnapping conviction to be based entirely on the perceptions of the victim. However, the "knowing" element of kidnapping requires not only perceptions on the part of the victim, but the defendant's knowledge that the defendant is causing those perceptions. Perhaps this concern would be more paramount in this case had Zimmerman ceased his conduct as soon as it became obvious to him that he was placing Robertson in fear. Support for the proposition that terminating an encounter at such a point would preclude a kidnapping conviction is found in *Wilson. See Wilson,* 468 N.E.2d at 1378 (noting that "the message intended for the would-be wrong doer [wishing to avoid a kidnapping conviction] is that if you are going to steal or commandeer a vehicle, let the people in it go"). However, Zimmerman not only remained in the vehicle after Robertson asked

him to get out, but affirmatively directed Robertson's driving while knowing that Robertson was in fear. *See* Tr. p. 17.

In any event, "knowingly" is a disjunctive mens rea element in the kidnapping statute, and the facts of this case make clear that Zimmerman knew that Robertson's fear was what caused her to drive from U.S. Highway 31 to State Road 135.

5. Robertson was so visibly frightened that she was seen "tightly clinching" a teddy bear after Zimmerman entered her car. Tr. p. 34. A jury could reasonably conclude that Zimmerman knew from this behavior that Robertson was frightened.

6. The majority finds the fact that Robertson did not consider herself a "hostage" to be significant. Op. at 1161. However, being a

as a result of this perceived threat, and Zimmerman knew of and took advantage of Robertson's fear, I would affirm Zimmerman's conviction.

hostage is not an element of kidnapping. Rather, Robertson's involuntary removal from one place to another is significant under the elements of kidnapping. *See* Ind.Code § 35–42–3–2. Immediately after Robertson testified that she did not believe that she was a hostage, she testified that the reason that she did not try to get out of her vehicle was due to her fear that she did not know what Zimmerman would do if she attempted to leave her vehicle. Tr. p. 31.