Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 03 2013, 5:49 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**THOMAS G. GODFREY**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JIMMY NAVE, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1307-CR-632 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable David A. Happe, Judge
Cause No. 48C04-1302-FA-409

**December 3, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Jimmy Nave, Jr., ("Nave") was convicted in Madison Circuit Court of Class A felony kidnapping. On appeal, Nave claims that the evidence was insufficient to support his conviction and that his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## Facts and Procedural History

On February 16, 2013, Ruth Clark, who was eighty-one years old at the time, left a shopping mall in Madison County and returned to her car in the mall parking lot. After Clark entered her car and sat in the driver's seat, a man later identified as Nave entered the back seat of her car, reached around Clark's seat, grabbed her by the face and mouth, and held a six-to-eight-inch knife to her neck. Clark was unable to move her arms due to this restraint by Nave but still attempted to call for help. Nave told her to "shut up" and ordered her to "drive." Tr. p. 31.

Fortunately for Clark, Robert Derrickson, a mall employee who was in the parking lot at the time, heard Clark's muffled screams and responded. Derrickson saw Nave in Clark's car with his hand over her mouth. Derrickson went to the car and asked Nave, "what [is] going on[?]" Tr. pp. 56-57. When Nave saw Derrickson, he exited the other side of the vehicle. Nave did not immediately leave the vicinity and stood face-to-face with Derrickson briefly until he began to walk away and leave the mall area. Derrickson noticed that Nave had something dark in his hand but was unable to identify what it was. Derrickson later identified Nave as the man he had seen in Clark's car.

As a result of this incident, Clark was visibly shaken. Although she initially told the police she was unhurt, she in fact had a bleeding wound on her face and later developed bruises on her face and hands.

On February 22, 2013, the State charged Nave with Class A felony kidnapping and Class B felony attempted carjacking. On June 24, 2013, a bench trial was held. Nave testified and admitted that he had gotten into Clark's car, but claimed that he did so only to confront her because she had backed into his vehicle. The trial court rejected Nave's version of events and found him guilty as charged.

At a sentencing hearing held on July 1, 2013, the trial court vacated the Class B felony conviction on double jeopardy grounds and sentenced Nave only on the Class A felony conviction. The trial court found as aggravating Nave's criminal history that included convictions for armed robbery, the fact that the victim was eighty-one years old, and the fact that Nave was on supervised release from federal custody at the time of the current offense. The trial court found as mitigating Nave's demonstration of remorse. The trial court then sentenced Nave to thirty-eight years, with three years thereof suspended to probation. Nave now appeals.

## I. Sufficiency of the Evidence

Nave first argues that the State failed to present evidence sufficient to support his conviction for Class A felony kidnapping. Upon a challenge to the sufficiency of evidence to support a conviction, we neither reweigh the evidence nor judge the credibility of the witnesses; instead, we respect the exclusive province of the trier of fact to weigh any conflicting evidence. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005).

3

We consider only the probative evidence and reasonable inferences supporting the judgment, and we will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. Id.

To convict Nave of Class A felony kidnapping, the State was required to prove that he "knowingly or intentionally confine[d] another person . . . while hijacking a vehicle[.]" Ind. Code § 35-42-3-2(a)(2). The term "highjacking" is not defined in the statute, but our supreme court has discussed and defined this term for purposes of the kidnapping statute:

> Based upon the use of the term "hijacking" in a statute designed to protect persons, the broad statutory definition of a vehicle subject to that action, and the current problems of which we are aware, we do not believe that the legislature intended to restrict kidnapping to those situations in which the vehicle was transporting goods. The word has a central core meaning which is commonly understood by the public at large; that is, *the exercising of unlawful or unauthorized control of a vehicle by force or threat of force upon the vehicle's inhabitants.* The legislature used the word in this manner. We discern that the legislature had it in mind in enacting this part of the kidnapping statute to prevent persons from being exposed to that special danger, that increased probability of injury or death, which results when one is seized and confined or transported in a commandeered vehicle. The message intended for the would-be wrong doer, is that if you are going to steal or commandeer a vehicle, let the people in it go and don't force people into it against their will.

Wilson v. State, 468 N.E.2d 1375, 1377-78 (Ind. 1984) (emphasis added).

Nave claims that there was insufficient evidence to support his conviction for kidnapping because he did not take control of Clark's car. Specifically, he argues, "Nowhere is there substantial evidence of probative value that Nave took control of [Clark]'s vehicle, as the vehicle was never started or moved, the parties did not change

4

position, and neither [Clark] nor Nave had access to the car keys prior to Nave's exit from the vehicle." Appellant's App. p. 6.

In support of his argument, Nave relies on the opinion of this court in Clayton v. State, 658 N.E.2d 82 (Ind. Ct. App. 1995). In that case, the victim was unloading her car in which her young son and young niece were sleeping. The defendant approached the victim, pointed a gun at her head and demanded money and her purse. The victim informed Clayton that her purse was in her house. She then grabbed her niece, removed her from the car, and went inside the house with Clayton following her. Clayton got the victim's purse and ordered her back outside. He then ordered her to get her keys and place them in the ignition. Clayton stood next to the victim as she inserted the keys into the ignition. He then ordered her to remove her son from the car. She did so and ran inside her house and telephoned the police as Clayton drove away. Clayton was later arrested and convicted of kidnapping.

On appeal, Clayton claimed that the State had failed to prove that he had "highjacked" the victim's vehicle. The Clayton court discussed the definition of "highjacking" as set forth by our supreme court in Wilson, and concluded that Clayton had not highjacked the car, noting, "because Clayton allowed [the victim] to take the children in the house, the children were placed in less danger than they would have been if Clayton had forced them to remain in [the] car." Id. at 87. The court then concluded:

> there is no evidence that Clayton used any force to keep [the children] in [the victim]'s car against their will. We observe that the evidence reveals that [the victim] voluntarily, without fraud, enticement, force or threat of force, took [her niece] into the house when she went to look for her purse. Subsequently, Clayton told [the victim] to remove [her son] from the car

5

before driving away. In addition, [the victim]'s testimony revealed that Clayton never threatened the children. Further, Clayton did not tell [the victim] to leave the children in the car nor did he try to prevent them from leaving. Rather, Clayton permitted [the victim] to remove [her niece] and he ordered [the victim] to remove [her son]. There is insufficient evidence to support Clayton's kidnapping conviction.

Id. at 88.

Nave claims that his case is on all fours with Clayton because Clark's vehicle was not operated and did not move in the incident. We disagree, and we find Clayton to be readily distinguishable. In Clayton, the defendant allowed, and even instructed, the victim to remove the children from the car and did not try to prevent her or the children from leaving the car. In contrast, here, Nave physically restrained Clark and placed a knife at her throat. He then told her to "shut up" and to "drive." Tr. pp. 31-32. Thus, Nave confined Clark and ordered her what to do with the car. We think this is sufficient to establish that Nave exercised "unlawful or unauthorized control of a vehicle by force or threat of force upon the vehicle's inhabitants." Wilson, 468 N.E.2d at 1377.

We do not consider it to be dispositive that Nave's crime was interrupted before Clark could actually start or drive the car. When Nave put the knife to Clark's throat and demanded that she drive, he acted to exercise unlawful or unauthorized control over her car by force. In so doing, he exposed Clark to the "special danger" the kidnapping statute seeks to punish: "that increased probability of injury or death, which results *when one is seized and confined* . . . in a commandeered vehicle." Wilson, 468 N.E.2d at 1378. In short, we hold that the State presented sufficient evidence to support Nave's conviction for kidnapping.

6

## II. Appellate Rule 7(B)

Nave also claims that his sentence is inappropriate. Pursuant to Indiana Appellate Rule 7(B), we may revise a sentence otherwise authorized by statute if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In our review of sentences under this rule, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." Trainor v. State, 950 N.E.2d 352, 355 (Ind. Ct. App. 2011), trans. denied.

Although we have the power to review and revise sentences, the principal role of our review should be to attempt to level the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve what we perceive to be a "correct" result in each case. Fernbach v. State, 954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011), trans. denied (citing Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008)). Our review under Appellate Rule 7(B) should focus on "the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. The appropriate question is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate. Fonner v. State, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). And it is the defendant's burden on appeal to persuade us

7

that the sentence imposed by the trial court is inappropriate. <u>Childress v. State</u>, 848 N.E.2d 1073, 1080 (Ind. 2006).

Nave was convicted of kidnapping as a Class A felony. The sentencing range for a Class A felony is twenty to fifty years, with thirty years being the advisory sentence. Ind. Code § 35-50-2-4. The trial court sentenced Nave to thirty-eight years with three years suspended—a sentence slightly over the advisory but nowhere near the statutory maximum of fifty years. With this in mind, we consider the nature of Nave's offense and his character.

Nave attacked a particularly vulnerable victim, an eight-one-year-old woman, physically restrained her, and placed a knife to her throat. Although the victim escaped serious injury, she did have a cut on her face and bruises on her face and hands. Nave's actions went beyond the bare minimum required to commit the crime. Thus, the nature of the offense supports the trial court's sentence. And Nave's character offers him little in the way of assistance in his claim. He has a criminal history that includes federal convictions for armed robbery, brandishing a firearm, and transporting stolen money. He was also on supervised release from incarceration at the time he committed the instant offense. Giving due consideration to the trial court's sentencing discretion, and considering the nature of the offense and the character of the offender, we are unable to conclude that Nave's thirty-eight-year sentence is inappropriate.

**Conclusion**

The State presented evidence sufficient to support Nave's conviction for kidnapping, and the sentence imposed by the trial court is not inappropriate.

Affirmed.

FRIEDLANDER, J., and CRONE, J., concur.