## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 10 2018, 10:46 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Tyler D. Helmond
Voyles Vaiana Lukemeyer Baldwin & Webb
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Durell T. Crain,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 10, 2018

Court of Appeals Case No.
49A02-1710-CR-2299

Appeal from the Marion
Superior Court

The Honorable Lisa F. Borges,
Judge

Trial Court Cause No.
49G04-1610-F3-40031

**Crone, Judge.**

# Case Summary

[1] Durell T. Crain appeals his conviction for level 3 felony kidnapping, arguing that the evidence is insufficient to support it. Concluding that the evidence is sufficient, we affirm.

# Facts and Procedural History

[2] On October 9, 2017, Crain called his sixty-two-year-old cousin Freddie Hollis to find out his plans for the day. Hollis said that he was going to a friend's house south of downtown Indianapolis. Crain asked if he could go with Hollis, and Hollis agreed. Hollis drove his truck to Crain's house at 12th Street and Arlington Avenue, picked him up, and drove them to Hollis's friend's house.

[3] While there, Hollis observed that Crain appeared intoxicated and started "talking crazy for no reason." Tr. Vol. 2 at 64. Hollis was embarrassed by Crain's behavior. At one point, a gun fell out of Crain's pocket. Hollis decided it was time to leave. Hollis was upset that Crain had a gun and did not want him to get in his truck. However, Hollis did not want to leave Crain stranded, so he allowed Crain to come with him.

[4] As Hollis was driving, he expressed his displeasure with Crain's behavior. Crain took his gun out of his pocket and said that he was tired of Hollis "getting on his case." *Id*. at 68. Hollis asked Crain, "What are you doing? You threaten me with a gun now?" *Id*. Hollis pulled over and repeatedly asked Crain to get out of his truck, but Crain would not comply. Hollis continued driving, but stopped again near 21st Street and Arlington Avenue and asked

Crain to get out of the truck. Crain would not get out. Hollis told Crain that Hollis was going to drive to Hollis's home.

[5] At 30th Street and Franklin Road, Crain said, "Let me out right here at the light." *Id.* at 71. Hollis pulled over, but Crain still would not get out. Hollis continued to drive to his home. As they approached 36th Street and Post Road, Crain called his mother and told her, "Freddie go kill me. He goes to kill me, mom. He gonna kill me. I know he is. I know he is." *Id.* at 72. Crain still had his gun out. Suddenly, Crain fired the gun. Hollis believed that he had been shot. Hollis put the truck in park and jumped out to see if he had been injured. When Hollis turned back toward the truck, he saw that Crain had "the gun pointed towards [him]" and that smoke was coming out of the barrel. *Id.* Crain told Hollis, "I ain't going to your house. You take me to my mom's." *Id.* Hollis got back in the truck because he was "scared for [his] life." *Id.* Crain kept the gun pointed at Hollis while Hollis drove Crain to his mother's apartment. *Id.* at 73.

[6] When Hollis arrived at Crain's mother's apartment, Crain would not get out of the truck. Hollis told Crain that he was going to call 911, and Crain finally exited the vehicle. However, when Crain saw Hollis actually calling 911, Crain ran back toward the truck waving his gun. Hollis drove away and finished his 911 call at a gas station. During the investigation, police observed what appeared to be a bullet hole and bullet fragments in the dashboard of Hollis's truck. Police obtained a search warrant for Crain's home and found a firearm under the hood of a vehicle in a garage attached to Crain's house.

The State charged Crain with level 3 felony kidnapping, level 5 felony attempted battery by means of a deadly weapon, unlawful possession of a firearm by a serious violent felon, and with being an habitual offender. A jury acquitted Crain of the attempted battery charge but found him guilty of the remaining charges and of being an habitual offender. The trial court sentenced Crain to an aggregate term of thirty-two years. This appeal ensued.

## Discussion and Decision

Crain challenges the sufficiency of the evidence to support his kidnapping conviction. In reviewing a claim of insufficient evidence, we do not reweigh the evidence or judge the credibility of witnesses, and we consider only the evidence that supports the judgment and the reasonable inferences arising therefrom. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." *Id*.

To convict Crain of level 3 felony kidnapping, the State was required to prove beyond a reasonable doubt that Crain, while armed with a deadly weapon, did knowingly remove Hollis by force or threat of force from one place to another. Ind. Code § 35-42-3-2(a), -(b)(2)(A); Appellant's App. Vol. 2 at 141. Crain contends that there "was insufficient evidence below for a reasonable trier of fact to find the knowing or intentional use of force or threat of force connected with the removal of [Hollis] to a different location." Appellant's Br. at 9. We disagree.

[10]     While Hollis was driving, Crain took his gun out of his pocket. As they approached 36th Street and Post Road, Crain called his mother. Hollis heard Crain tell his mother that he thought Hollis was going to kill him. Then, Hollis heard the gun fire. Hollis was afraid Crain had shot him, so he stopped the truck and jumped out to see if he was injured. Hollis then saw Crain pointing the smoking gun at him. Crain told Hollis, "I ain't going to your house. You take me to my mom's." Tr. Vol. 2 at 72. Hollis was "scared for [his] life," so he got back in the truck and drove Crain to his mother's apartment. *Id*. Even then Crain kept his gun pointed at Hollis. *Id*. at 73. This constitutes substantial evidence of probative value such that a reasonable trier of fact could conclude that Crain knowingly or intentionally used force or the threat of force to remove Hollis to a different location. Crain's argument is merely an invitation to reweigh the evidence, which we must decline. Accordingly, we affirm his kidnapping conviction. *See Sears v. State*, 668 N.E.2d 662, 670 (Ind. 1996) (rejecting Sears's contention that victim voluntarily accompanied him and concluding that evidence showing that Sears pulled out his gun and told victim to keep driving and would not let her get out of the vehicle was sufficient to support kidnapping conviction).[1]

---

[1] In his reply brief, Crain cites *J.D.Z. v. State*, 785 N.E.2d 1158, 1161 (Ind. Ct. App. 2003), *trans. denied*, in which another panel of this Court reversed J.D.Z.'s conviction for kidnapping based on insufficient evidence that he controlled the victim's vehicle by force or threat of force. That case is readily distinguishable because J.D.Z. never made any threats to the victim to continue driving him around town and did not display any weapons. *Id*. Here, Crain pointed his gun at Hollis and told him to take Crain to Crain's mother's home.

Affirmed.

Bailey, J., and Brown, J., concur.